ASHTON v. NOBLE *et al.*

No. 4231. Opinion Filed May 11, 1915.

(148 Pac. 1043.)

1.  **ASSIGNMENTS—Rights Assignable—Leaseholder.** The right of action of a leaseholder to sue and recover for the use and oc-

cupancy of lands, held unlawfully by another, is assignable.

2.   CHAMPERTY AND MAINTENANCE—Conveyance of Restricted Indian Lands—Operation of Statute. The statutes of the state, intended to prevent champerty and maintenance, and the state adjudications, rendering inoperative a deed by a grantor out of possession, as against the adverse holder of the land, are inap-. plicable, inoperative, and ineffective, as against a sale of and a deed to restricted Indian lands made in conformity to the laws of the United States, by and through its chosen governmental agencies.

(Syllabus by Brewer, C.)

*Error from District Court, Ottawa County;*

*Preston S. Davis, Judge.*

Action by R. W. Ashton against Charles F. Noble and others. Judgment for defendants, and plaintiff brings error. Reversed with directions.

*A. C. Wallace* and *Paul A. Ewert,* for plaintiff in error.

*W. H. Kornegay,* for defendants in error.

BREWER, C. This appeal is predicated upon alleged errors of the trial court in sustaining a demurrer to the petition of plaintiff; and for a proper determination of this cause, it is necessary to consider and pass upon the two following propositions: (1) Is the right to sue and recover for the use and occupancy of lands, held unlawfully assignable? (2) Do the statutes and decisions of this court relating to champerty and maintenance render inoperative, against the adverse holder, a deed to a restricted Indian allotment, made in conformity to the laws of the United States and the rules and regulations of the Department of the Interior, and with the approval of the Secretary thereof?

It is alleged in the petition that one Barnhart became, on May 4, 1908, the owner and holder of a valid agricultural lease on certain lands (described), said lease running for a period of three years; that on the 15th day of February, 1911, and during

the term of said lease, it was assigned to plaintiff in error Ashton, together with a specific assignment in writing of the right to sue and recover from the defendants in error for the use and occupancy of said lands, which had been by them unlawfully occupied since May 4, 1908. It also averred that in the meantime, and prior to the assignment of said lease, Ashton had become the owner in fee of the lands involved, through a purchase of same made in conformity to the laws of the United States and under rules and regulations prescribed by the Department of Interior, and that the deed thereto had been approved by the Secretary of the Interior, who was, under the law, clothed with such power.

Under the petition, plaintiff sought to recover for the use and occupancy of the lands as an assignee of Barnhart's right so to do for the period embraced between May 4, 1908, and February 15, 1911; and in his own right, as owner of the fee from the last named date, to March 10, 1911.

If the right of action of Barnhart was assignable, plaintiff could recover for the first named period. If it was not assignable, he could not recover for that period, but could recover for the last named period, unless prevented from doing so by the fact that his approved deed appears from the pleadings to have been taken while the lands were unlawfully and adversely held by the defendants. We think this statement clearly brings into view the two legal propositions involved, and we shall treat them in the order named in the beginning of this statement.

Was the chose in action assignable? Section 7349, Comp. Laws 1909 (section 6740, Rev. Laws 1910), provides:

"A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office."

Section 5943, Comp. Laws 1909 (section 5279, Rev. Laws 1910), provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, * * * shall also survive. * * *"

It has been very generally held throughout the United States that the true test of whether or not a cause of action is assignable depends upon whether or not, upon the death of the owner, it passes to and becomes enforceable by his personal representatives. In other words, whether or not, under the law of the particular state, it is such a cause of action as will survive; but our attention is called to another section of the statute, being section 5558, Comp. Laws 1909 (section 4681, Rev. Laws 1910), which is as follows:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 5560, but this section shall not be deemed to authorize the assignment of a thing of action, not arising out of contract."

These statutes came under review by this court in the case of *Kansas City, M. & O. Ry. Co. v. Shutt*, 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255. In that case, the court was of the opinion that this last named section of the statute had the effect, when construed in connection with the other sections, *supra*, of modifying, to an extent, the general rule stated above as to the test regarding the assignability of a cause of action, and to such an extent that one would not be assignable, if it were based upon a tort, pure and simple. In the body of the opinion in the case last cited, the following analysis of the statute is made:

"We take it that section 4163, Wilson's Rev. & Ann. St. (section 6740, Rev. Laws 1910), *supra*, in view of sections 4224 and 4609 Wilson's Rev. & Ann. St. (sections 4681, 5279, Rev. Laws 1910), *supra*, covers actions growing out of contracts, or arising out of violations of rights of property, where such violation partakes, not only of the nature of a tort, but also of an implied contract, being in the nature of assumpsit, as, for

instance, the unlawful taking and conversion of money or of other personalty to one's use, as in the case of *Stewart v. Balderston*, 10 Kan. 131, which was an action based on a claim for money wrongfully taken and converted."

In that case, it is made to appear that although an action may be tortious or wrongful in its nature, yet if, while it partakes of the nature of a tort, it has also the elements of an implied contract, being in the nature of assumpsit, that it would be assignable. In the case of *Stewart v. Balderston,* 10 Kan. 131, mentioned in the excerpt quoted above, a recovery was permitted for money wrongfully and tortiously taken away from another, on the theory that such a claim was assignable, because of an implied promise. In *Chicago, R. I. & Pac. Ry. Co. v. Bankers' National Bank,* 32 Okla. 290, 122 Pac. 499, it was held that a claim arising out of injuries to freight while in the possession of a carrier, was assignable.

Coming then, to the facts in this case, is a man who enters upon lands, without contract and without right, and appropriates the use and benefit thereof, and withholds same from the owner, either of the title or one holding under a valid lease and entitled to the rents and profits, guilty of a pure tort? Why would not the law, under such circumstances, raise an implied promise to pay to the one entitled to receive compensation for such use and occupation? We think it would, beyond any question. Instances often arise where one may hold the lands and tenements of another, without permission, or even the knowledge of the owner, and without any intention of doing wrong, but fully expecting to pay a reasonable compensation for such use later. A traveler, passing along, might, through misadventure, seek refuge in, or take possession of, vacant premises belonging to another, and do so without even stopping to inquire as to their owner. Circumstances might follow, under which even with worthy motives, he would feel it necessary to continue such occupancy, expecting, when called upon, to make reasonable compensation therefor. Upon the whole, we think such cause of action is assignable,

under a proper construction of the general statutes.

Since preparing the above opinion, we have come across a statute, which evidently was not observed by either counsel in this case, but which, we think, specifically gives absolute and unquestioned statutory authority for the assignee of a lease to maintain any suit in relation to the lands which the lessor himself could have maintained; said section being section 4090, Comp. Laws 1909 (section 3798, Rev. Laws 1910), which is as follows:

"Alienees of lessors and lessees of land shall have the same legal remedies in relation to such lands as their principal."

That Barnhart could have sued and recovered of defendants for the wrongful use and occupancy of said lands, in his own name, cannot be questioned, and the principle is not here denied. If so, the man Ashton, to whom he assigned his lease, and who would be, technically speaking, his alienee, can bring the suit, because the cause of action is in relation to the land, and his principal, Barnhart, could have brought said suit.

(2)    On this point, we have no doubt but that the government of the United States, in handling the restricted lands of these Indians, could, when authority by laws of the United States is conferred so to do, arrange for the sale and approve a conveyance, passing the title to such lands without inquiring as to whether or not there are persons unlawfully holding adversely, and without regard to our state statutes relating thereto, or our adjudications, holding inoperative conveyances made as against adverse holders, based upon the statute regarding champerty and maintenance. The power of the federal government over these restricted Indian lands was retained in the Enabling Act, and was agreed to by the people of this state in the Constitution which they adopted. In *F. B. Collins Inv. Co. et al. v. Beard, ante*, 148 Pac. 846, this court held that:

"When the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation is involved, we must look to the acts of Con-

gress and to those acts and laws alone. In other words, if a state law, by its language or through its proper construction or its operation would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state law fails; and this, because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state; and this reservation of jurisdiction was assented to in the Constitution which the people adopted. To give the desired construction to either of the statutes under consideration would be, in effect, to accomplish the removal of the federal restrictions on the sale of allotted lands, by means of state legislation. Once conceding this principle, it is easily seen that the federal control would be interfered with, and might ultimately be entirely suspended. No such construction is possible. *Chapman v. Siler*, 30 Okla. 714 [120 Pac. 608]; *Walker v. Brown*, 141 Pac. 681; *In re Probate of Will of Emerson Allen*, 46 Okla. —, 144 Pac. 1055; section 1 Enabling Act (running section 413, Williams' Ann. Const.; section 43, art. 25, Constitution)." *Truskett v. Closser*, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. —.

The principle stated above is applicable here for, to hold inoperative a sale of restricted Indian lands by the government through its chosen agencies, would be to interfere with the governmental control and management of the lands of its Indian wards.

The cause should be reversed, with directions to overrule the demurrer to the petition.

By the Court: It is so ordered.