MOMAND v. TWENTIETH–CENTURY FOX FILM CORPORATION et al.

SAME v. GRIFFITH AMUSEMENT CO. et al.

Nos. 6516, 6517.

District Court, W. D. Oklahoma.

March 13, 1941.

Stanard, Carey & Stanard, of Shawnee, Okl., George Ryan, of Boston, Mass., and C. Ray Smith, of Santa Fe, N. M., for plaintiff.

Keaton, Wells & Johnston, Everest, Mc-Kenzie & Gibbens, and Henry Griffing, all of Oklahoma City, Okl., for defendants in both cases.

MURRAH, United States Circuit Judge, assigned and sitting as United States District Judge.

The plaintiff brings this suit as the assignee of certain causes of action, created and granted by Section 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 15. The defendants have challenged the right of the plaintiff to maintain the alleged causes of action, by a motion to dismiss. They contend that the alleged causes of action sound in tort and plaintiff cannot maintain the suits as assignee because Oklahoma law forbids the assignment of a cause of action sounding in tort.

This question was argued and submitted to the court and, after consideration, the motion to dismiss was overruled. The court, in its order overruling the motion, stated briefly his reasons. The same question is raised in the answer of the defendants and the defendants have earnestly petitioned the court to reconsider the question of the assignability of these causes of action. The question is of vital importance and has been earnestly presented and because I will not have further responsibility in connection with this case, it was thought proper to reconsider the motion to dismiss. The parties have again briefed this question; the briefs have been carefully considered and I have determined to set out my views in more detail.

The sole question is the assignability of the causes of action, created and granted by the Sherman Anti-Trust Act. The Act generally condemns certain combinations and agreements in restraint of trade and business affecting interstate commerce and derives its source of power from the interstate commerce clause of the Constitution. Section 7 of the Act grants to one injured in his business or property a right of action for damages against those found guilty of violation of the Act, and specifically provides exclusive jurisdiction in the United States District Courts to enforce the remedy created thereby.

The complaint herein alleges an unlawful combination and agreement to injure plaintiff's assignors in their business. It is alleged that by the unlawful combination and agreement the plaintiff's assignors were injured in their business and property. The complaint further alleges, in substance, that the injury was effected by certain contracts and agreements which the plaintiff's assignors were required to enter into with the defendants; that such contracts and agreements were the instruments by which the unlawful purposes were effected.

It will be assumed that the complaint states a cause of action on which relief can be granted, based upon these allegations. The Sherman Anti-Trust Act is silent on the question of the right to assign a cause of action growing out of acts condemned by the Act itself. The plaintiff earnestly contends that the right of action is one created by Congress, acting in a field in which it is paramount, if not exclusive. This being so, the question of assignability of a cause of action, created thereby, is governed and controlled by the decisions of the Federal courts, unrestrained by the laws of the states, and in this instance the laws of the state of Oklahoma.

Assignability and survivability are convertible terms and, for the purpose of considering the applicable law, cases involving survivorship are applicable here. State ex rel. Mitchell v. City of Shawnee, 167 Okl. 582, 31 P.2d 552, 92 A.L.R. 948; 1 American Jurisprudence, § 80, and 6 Corpus Juris Secundum, Assignments, § 32.

Under the broad common law rule, causes of action for torts, or sounding

in tort, did not survive and were, therefore, not assignable. The maxim actio personalis moritur cum persona (personal action dies with the person) originally applied to most every form of action, whether arising out of contract or tort, but the common law was modified by the Statute of 4 Edward the III.[1]

Under the interpretation of the common law, as modified by the Statute of 4 Edward the III, it has been generally held that a cause of action created by Section 7 of the Sherman Anti-Trust Act was assignable, on the theory that although the action was for a wrongful act and therefore tortious, the acts declared to be unlawful did not affect the person but the business or property of the assignor and it was, therefore, not ex delicto and came within the exception of the general rule forbidding the assignment of a thing in action, arising out of a tort. More accurately, this rule is limited to torts in the nature of personal wrongs. 1 American Jurisprudence, § 84. In Sullivan v. Associated Billposters and Distributors, 2 Cir., 6 F.2d 1000, 1004, 42 A.L.R. 503, it is stated: " * * * The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. * * *"[2]

The Federal courts were generally of the opinion that a right of action created by Section 7 of the Sherman Anti-Trust Act fell upon the "property and business" of the complaining party and was not personal in its nature in the sense of a tort which inflicted bodily harm, injury to the reputation, such as libel and slander, etc. See Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241. It is readily conceded that the definition given to the right of action by the Federal law is binding. Stated otherwise, the nature of the cause of action, created and granted by the Sherman Anti-Trust Act, is to be determined by the Federal decisions.

The defendants contend that after determining the nature of the cause of action under the notions of Federal law, the question of whether or not that particular type or kind of cause of action may be assigned and the assignee entitled to maintain an action in the courts of the United States, within the state of Oklahoma, is a question of local law, which the Federal courts must follow in the determination of that question.

To this extent, the Rules of Decision Act, 28 U.S.C.A. § 725,[3] is invoked, and to the same extent, the answer lies in the construction and application of that statute to the particular question before us. The question is neither new nor novel but has been the legal battleground for controversies involving the interplay of Federal and state law almost since the establishment of American jurisprudence. See Wheaton v. Peters, 8 Pet. 591, 8 L.Ed. 1055.

It, therefore, becomes our duty to decide the two-fold question: First, do the statutes of the state of Oklahoma, regulating the right to assign a chose in action, or a thing in action, apply in the instant case, and, Second, if they do apply, do they prohibit the assignment of the cause of action under consideration? The latter question involves the controlling effect of the decisions of the state of Oklahoma, which construe the statutes relating to the survivability of causes of action.

We are not concerned with the application or the controlling effect of the common law of the state of Oklahoma, as that subject was treated in the now famous case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. No case is cited by the parties, neither has any party suggested that the common law of Oklahoma is applicable and controls the question of the assignability of this cause of action. If this question is to be decided under the law of the state of Oklahoma, it is decided by the applicable statutes.

We shall first consider whether or not the law of Oklahoma has any application

---

[1] Moore v. Backus, 7 Cir., 78 F.2d 571, 583, 101 A.L.R. 379, certiorari denied 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455.

[2] Imperial Film Exchange v. General Film Co., D.C., 244 F. 985; United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Sampliner v. Motion Picture Patents Co., 2 Cir., 255 F. 242; Moore v. Backus, supra;

and Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583.

[3] Rules of Decision Act: "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

to these causes of action created by the Sherman Anti-Trust Act.

The statutes of limitations have almost without exception been applied to causes of action created and granted by Federal law. The rule, and the determination of the application and its underlying logic was comprehensively discussed in Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 219, 39 L.Ed. 280, wherein it is stated: " * * * Indeed, to no. class of state legislation has the above provision [28 U.S.C.A. § 725] been more steadfastly and consistently applied than to statutes prescribing the time within which actions shall be brought within its jurisdiction. It is insisted, however, that, by the express terms of section 721 [28 U.S.C.A. § 725], the laws of the several states should be enforced only 'in cases where they apply,' and that they have no application to causes of action created by congressional legislation and enforceable only in the federal courts. The argument is that the law of the forum can only apply to matters within the jurisdiction of the state courts, and that the recognition given by congress to the laws of the several states does not make such laws applicable to suits over which the state courts have no jurisdiction, because, for want of jurisdiction over the subject-matter of the suit, * * * in other words, that the states, having no power to create the right or enforce the remedy, have no power to limit such remedy or to legislate in any manner with respect to the subject-matter."

This is precisely the argument of the plaintiffs here. Justice Brown (Campbell v. Haverhill, supra) answered the perplexing and vexatious problem thusly: " * * * Doubtless such an argument would apply with peculiar emphasis to statutes, if any such existed, discriminating against causes of action enforceable only in the federal courts * * *. In such case it might be plausibly argued that it could never have been intended by congress that section 721 [28 U.S.C.A. § 725] should apply to statutes passed in manifest hostility to federal rights or jurisdiction. * * * Perhaps under the final words of section 721, 'in cases where they apply,' the court may have a certain discretion with respect to the enforcement of state statutes such as was exercised by this court in several cases arising under section 914 [28 U.S.C.A. § 724], respecting pleadings and forms and modes of proceeding. * * * Recurring then to the main ·proposition above stated,

it may be well questioned whether there is any sound· distinction in principle between cases where the jurisdiction is concurrent and those where it is exclusive in the federal courts. The section itself neither contains nor suggests such a distinction. * * * The truth is that statutes of limitations affect the remedy only, and do not impair the right, and that the settled policy of congress has been to permit rights created by its statutes to be enforced in the manner and subject to the limitations prescribed by the laws of the several states. * * * Whatever diversity of opinion there may be among jurists upon this point, we think it well settled to be a plea to the remedy, and consequently that the lex fori must prevail." See, also, Schreiber v. Sharpless, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65, and Martin v. Baltimore & Ohio R. Co., 151 U.S. 673, 14 S.Ct. 533, 38 L.Ed. 311.

Specifically the state statutes of limitations were held applicable to causes of action, created by the Sherman Anti-Trust Act, in the following cases: Chattanooga Foundry & Pipe Works v. City of Atlanta, supra, and Williamson v. Columbia Gas & Electric Corporation, 3 Cir., 110 F.2d 15.

In Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, at page 890, the rule is stated 'thus: "The appellant contends that under this statute [Sherman Anti-Trust Act] the period of limitations for this case is five years, while the appellees contend that it is only one year. Which view is correct is to be determined not from the local West Virginia decisions but from federal decisions construing the Act of Congress in the light of the common law and determining whether the nature of the civil action is one that survives or abates upon the death of the party. * * * " Compare Henshaw v. Miller, 17 How. 212, 217, 15 L.Ed. 222. This case, based on diversity of citizenship, involved survivability of an action sounding in tort. The court said: " * * * we must adopt for our guidance the following principle, namely, that this question is to be determined by the rule of the common law with respect to the revival of suits, except so far as that rule has been modified, either by restriction or enlargement, by the statutory provisions of the Virginia laws." See, also, Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713.

■ It is fundamental now that to the extent, herein noted, states, by statutes, may impose a limitation upon the remedy for a

right created by Congress in a field in which it is paramount and exclusive. There is, however, one exception to the application of state law, both common and statutory, to the remedies for rights and causes of action created by Federal statute, and that exception is recognized with equal force in the decisions of the Supreme Court of the United States prior and after Erie Railroad Co. v. Tompkins, supra. The line of demarcation between the application of Federal and state law is difficult of ascertainment in matters pertaining to the enforcement of a right created by Federal statute. There is certainly a realm in which the Federal courts are free to exercise their own discretion, unrestrained by the application of any state law. Whether or not the assignability of these causes of action comes within that realm of judicial determination, which certainly exists, is one of the problems which confronts us.

It is made plain in Smith v. Alabama, 124 U.S. 465, 8 S.Ct. 564, 569, 31 L.Ed. 508, where the court had under consideration the exclusive province of the power of Congress over interstate commerce and the power of the State to invade the field on a subject in which Congress had not seen fit to legislate. The court stated: " * * * there is no common law of the United States, in the sense of a national customary law, distinct from the common law of England, as adopted by the several states each for itself, applied as its local law, and subject to such alteration as may be provided by its own statutes. Wheaton v. Peters [supra]."

The court recognized the original doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, and then recognized still another exception to the rule announced: "There is, however, one clear exception to the statement that there is no national common law. The interpretation of the constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history. The code of constitutional and statutory construction which, therefore, is gradually formed by the judgments of this court, in the application of the constitution and the laws and treaties made in pursuance thereof, has for its basis so much of the common law as may be implied in the subject, and constitutes a common law resting on national authority. Moore v. United States, 91 U.S. 270 [23 L.Ed. 346]."

This is the so-called body of common law which the plaintiffs urge as controlling the question here. The law merchant doctrine, as established by Swift v. Tyson, supra, had been so expanded (see Moore v. Backus, supra), that the Federal courts, by the time of Erie Railroad Co. v. Tompkins, supra, had pervaded the field of common law and had created a body of law which the courts in Smith v. Alabama, supra; Campbell v. Haverhill, supra; Moore v. United States, supra; McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Schreiber v. Sharpless, supra, and Martin v. Baltimore & Ohio Railroad, supra, had never intended to create. An analysis of the decisions which bear on this question shows clearly that the accruements of the doctrine of Swift v. Tyson, supra, as it came to be known in cases condemned by Erie Railroad Co. v. Tompkins, supra, were based on diversity of citizenship. See Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Kuhn v. Fairmont Coal Co., 215 U.S. 349, 30 S.Ct. 140, 54 L.Ed. 228; Baltimore & Ohio Railroad Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645, and United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28; Vandenbark v. Owens-Illinois Glass Co., 61 S.Ct. 347, 85 L.Ed.——.

It is significant to note that Justice Holmes' dissent in the Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., supra, has undoubtedly become the law in Erie Railroad Co. v. Tompkins. He stated [276 U.S. 518, 48 S.Ct. 409, 72 L.Ed. 681, 57 A.L.R. 426]: "I should leave Swift v. Tyson undisturbed, as I indicated in Kuhn v. Fairmont Coal Co., but I would not allow it to spread the assumed dominion into new fields." In speaking of "matters of general law," Justice Holmes stated: " * * * By that phrase is meant matters that are not governed by any law of the United States or by any statute of the State * * *."

There is nothing in Erie Railroad Co. v. Tompkins, supra, which conflicts with the doctrine announced in Smith v. Alabama, supra. See, also, Board of Commissioners of County of Jackson, Kan., v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313, and Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694.

It is, therefore, our responsibility to determine whether or not the question before

us is controlled by that body of law which survived the rectifying doctrine of Erie Railroad Co. v. Tompkins, supra. It must be remembered, as above stated, that we are dealing with a statute of the state of Oklahoma and not with the common law; or precisely, the common law of the state of Oklahoma, as modified by statute.

In the determination of the question of whether or not the law of Oklahoma shall apply we are cited to the decisions of the Supreme Court of the United States, subsequent to the case of Erie Railroad Co. v. Tompkins, supra, and indeed the language used in the cases cited, strongly indicates a disinclination to narrow the field thus recognized. These cases definitely recognize the freedom of Federal courts to exercise exclusive discretion in the determination of questions of law which arise as a necessary incident to the interpretation and enforcement of Federal acts.

In Board of Commissioners of County of Jackson, Kan., v. United States, supra [308 U.S. 343, 60 S.Ct. 287, 84 L.Ed. 313], Justice Frankfurter, in deciding the question of the application of the law of Kansas to a question involving interest on taxes wrongfully collected (see Jackson County v. Kaul, 77 Kan. 715–717, 96 P. 45, 17 L.R. A.,N.S., 552), stated: " * * * But Congress has not specifically provided for the present contingency, that is, the nature and extent of relief in case loss is suffered through denial of exemption. It has left such remedial details to judicial implications. Since the origin of the right to be enforced is the Treaty, plainly whatever rule we fashion is ultimately attributable to the Constitution, treaties or statutes of the United States, and does not owe its authority to the law-making agencies of Kansas. Cf. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487." The court proceeded to decide the question "according to the traditional notions of Anglo-American law", stating: "Nothing that the state can do will be allowed to destroy the federal right which is to be vindicated; but in defining the extent of that right its relation to the operation of state laws is relevant."

Again, in Deitrick v. Greaney, supra [309 U.S. 190, 60 S.Ct. 485, 84 L.Ed. 694], Justice Stone approached the same question in the following language: " * * * But it is the Federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted, see, Board of County Commissioners of Jackson County, Kan., v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313." See, also, Lincoln Mine Operating Co. v. Huron Holding Corporation, 9 Cir., 111 F.2d 438; New York Life Ins. Co. v. Waterman, 9 Cir., 104 F.2d 990, at page 1005, and Dayton & Michigan R. Co. v. Commissioner of Internal Revenue, 4 Cir., 112 F.2d 627, at page 630, and other cases cited by the plaintiff.

We ask ourselves then: Is the question of the assignability of this cause of action, growing out of acts condemned as unlawful by a Federal statute, a "remedial detail" requiring judicial determination in which the Federal courts may apply their own notions of the rule.

Under my interpretation of the decisions, early and late, it remains to be determined whether assignability of a cause of action is merely an incident to the main remedy, to the extent that the application of the state law would conflict with the broad and comprehensive purpose of the act and interdite the full and complete sway of its intendment. If it would, the state law is not applicable and we are free to determine for ourselves, independently and unfettered by the application of any state statute, the question of its assignability.

It was held in the numerous cases cited, supra, that the state was free to place a limitation upon the time in which a remedy granted by Federal statute could be asserted in a state, and that such limitations would not impair the right created by congressional statutes. See Campbell v. Haverhill, supra; Schreiber v. Sharpless, supra; O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Williamson v. Columbia Gas & Electric Corporation, 3 Cir., 110 F.2d 15; and Pathe Exchange v. Dalke, 4 Cir., 49 F.2d 161.

A careful consideration of the cases convinces me that the question of the assignability of these causes of action involves a limitation upon the remedy for a right created by Federal statute; that assignability is not such a remedial incident to the right created in the sense that the local law of the forum may be disregarded in the determination of the question. I can see no material difference between a limitation

upon the right to assign and a limitation upon the time in which the right may be asserted. The question of whether a particular cause of action is the kind that survives and is assignable is a question, not of procedure but of right, and the question of an assignment depends upon the substance and the nature of the cause of action, not on the forms of proceeding to enforce. [4]

If the question be procedural, Civil Rules of Procedure, rule 17(b), 28 U.S.C.A. following section 723c, provides that capacity to sue is governed by the law of the plaintiff's domicile—it is controlled by substantive law. See Moore's Federal Practice, Vol. 2, paragraph 2053.

True, we are not concerned with the validity of the assignment of the cause of action, as depending upon the sufficiency of the consideration; fraud in its procurement; its ownership, or property interest therein; the legality of its execution and numerous other questions which might bear upon its legal sufficiency. It must be conceded that these questions would be governed by state law and over which the state courts would have jurisdiction, especially if the controversy arose between the assignor and assignee. United States v. Brookridge Farm, 10 Cir., 111 F.2d 461; Commercial Credit Co. v. Davidson, 5 Cir., 112 F.2d 54; Cf. Lang v. Commissioner of Internal Revenue, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319.

Likewise, we are not concerned with the interpretative provisions of a Federal act, in the sense that we are asked to limit its validity or legal sufficiency to conform to the limitations of a state act.

It is manifest that the statutes of the state of Oklahoma, which bear upon the question of the assignability of a cause of action, apply in this case. In the consideration of that question, it is the duty of this court, as heretofore stated, to decide the nature of the cause of action, created by the Sherman Anti-Trust Act. To that extent we are free to attribute to it whatever indicia comports with our notions, compatible with the adjudicated decisions of the Federal courts.

When we have done that it is for us to determine whether or not such a cause of action, or right of action is assignable, in the sense that the assignee may maintain an action to redress the alleged wrong, under the statutes and law of the state of Oklahoma; and, ultimately, whether or not that type, or class of action, falls within the category of cases, the assignment of which are permitted under state law. If it does fall within that category the motion to dismiss must be overruled. If it does not fall within the permissible limitations of the applicable statutes, the motion to dismiss must be sustained. The applicable statutes of the state of Oklahoma, bearing upon this question are 60 Oklahoma Statutes Annotated, Sections 312 and 313; 12 Oklahoma Statutes Annotated, Section 1051, and 12 Oklahoma Statutes Annotated, Section 221. [5]

These statutes have been construed together by the Supreme Court of the state of Oklahoma. They first came before the court in Kansas City M. & O. Railroad Co. v. Shutt, 24 Okl. 96, 104 P. 51, 53, 138 Am.St.Rep. 870, 20 Ann.Cas. 255, wherein the court stated in reference to

---

[4] Michigan C. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann. Cas.1914C, 176; Martin v. Baltimore & Ohio R. Co., supra, Schreiber v. Sharpless, supra, and Tuttle v. Short, 42 Wyo. 1, 288 P. 524, 70 A.L.R. 106.

[5] 60 Oklahoma Statutes Annotated, Sections 312 and 313:

312: "A thing in action is a right to recover money or other personal property, by judicial proceedings."

313: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office."

12 Oklahoma Statutes Annotated, Section 1051: "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

12 Oklahoma Statutes Annotated, Section 221: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article but this section shall not be deemed to authorize the assignment of a thing in action, not arising out of contract."

the statutes, supra: "Evidently this provision recognizes the limitation which existed at common law when the Code was adopted, and, inferentially at least, provides that a chose in action arising out of a pure tort is not assignable. * * * We conclude that an action growing out of a tort pure and simple, like the one involved in this case—the destruction of property by fire alleged to have been wrongfully set out—it is not assignable."[6]

These decisions commit Oklahoma to the doctrine of strict construction of the common law on the question of assignment, and have the effect of prohibiting the assignment of any cause of action not arising out of contract. Stated otherwise, a tort pure and simple is any tort which does not arise out of a contract, express or implied. We have come to this conclusion reluctantly because we are convinced that the construction of these statutes, by the Supreme Court of Oklahoma, further restricts instead of enlarging the rule of the common law. 1 American Jurisprudence, §§ 76 to 86, 6 Corpus Juris Secundum, Assignments, §§ 30 to 35.

Under the Federal decisions, supra, and many state decisions, construing somewhat the same statutes, the rule of non-assignability has been confined to that class of tort actions which fall upon the person, such as personal injury caused by negligence, assault and battery, or to the reputation, as by libel or slander; for criminal conversation; for false arrest; for seduction; for malicious abuse of process; for malicious prosecution. A clear distinction is recognized in many states between these causes of actions for wrongs which affect the person strictly and all others. See 5 Corpus Juris at page 889; 6 Corpus Juris Secundum, Assignments, § 34, at page 1082. It is the general rule now that a right of action in tort, which does not apply to the person strictly, but involves directly or indirectly, a right of property or injury to one's property or estate, is assignable. Assignability is the rule and non-assignability the exception.[7]

A right of action created by the Sherman Anti-Trust Act has been repeatedly held to be one involving an injury to one's property or estate. Chattanooga Foundry & Pipe Works v. City of Atlanta, supra; Imperial Film Exchange v. General Film Co., supra; Hicks v. Bekins Moving & Storage Co. supra, and Moore v. Backus, supra. In Williamson v. Columbia Gas & Electric Corporation, supra, the court classified the cause of action as a trespass on the case. It was observed that the common law trespass on the case was a form of action recognized at common law for wrongs for which no other remedy was provided. See, also, Imperial Film Exchange v. General Film Co., supra.

The right of action created by Section 7 of the Sherman Anti-Trust Act, is not a penalty but remedial, and the remedy granted is to one injured in his business or property by reason of the acts forbidden in the preceding sections of the Act. Sullivan v. Associated Billposters & Distributors of the United States, supra, and Chattanooga Foundry & Pipe Works v. City of Atlanta, supra.

We have determined the nature, the type, the kind, and the class of the cause of action created by the Sherman Anti-Trust Act by resort to the decisions of the Federal courts, which have interpreted and construed the Act and the cause of action created thereby. We have, by resort to the decisions of the State of Oklahoma, determined the nature, the type and classes of action, the assignment of which are permitted under the laws of Oklahoma and those, the assignment of which the laws of Oklahoma forbid. It remains for us to decide whether or not the cause of action thus

---

[6] The Shutt case was followed in Ashton v. Noble, 46 Okl. 296, 148 P. 1042; Harrington v. Central States Fire Ins. Co., 169 Okl. 255, 36 P.2d 738, 96 A.L.R. 859; State ex rel. Mitchell v. City of Shawnee, supra; and McCoy v. Moore, 185 Okl. 253, 91 P.2d 87. See, also, Chilcote v. Hoffman, 97 Ohio St. 98, 119 N.E. 364, L.R.A.1918D, 575.

[7] Bethlehem Fabricators v. H. D. Watts Co., 286 Mass. 556, 190 N.E. 828–833, 93 A.L.R. 1124; Idaho Gold Dredging Corporation v. Boise Payette Lumber Co., 54 Idaho 765, 37 P.2d 407; Stapp v. Madera Canal & Irrigation Co., 34 Cal. App. 41, 166 P. 823; Staley v. McClurken, 35 Cal.App.2d 622, 96 P.2d 805–807; Federal Gravel Co. v. Detroit & Mackinac R. Co., 263 Mich. 341, 248 N.W. 831; Morris v. Standard Oil Co., 200 Cal. 210, 252 P. 605; Wikstrom v. Yolo Fliers Club, 206 Cal. 461, 274 P. 959, 960; Arkansas Life Ins. Co. v. American National Ins. Co., 110 Ark. 130, 161 S.W. 136; Auslen v. Thompson, 38 Cal.App. 2d 204, 101 P.2d 136, and 6 Corpus Juris Secundum, Assignments, § 34, p. 1082, note 10.

defined falls within the category of cases, the assignment of which are prohibited.

This leads us to the inquiry of what are the acts declared to be unlawful by the Sherman Anti-Trust Act, from which springs the remedy asserted. The answer is decisive of the question presented.

The complaint, stating the cause of action, alleges in substance and effect, that the defendants formed a combination and agreement designed to injure the plaintiff's assignors in their business and property and that the combination and agreement was one condemned by the provisions of the Sherman Anti-Trust Act. The complaint further alleges in substance that the purposes of this combination and agreement were effected by certain written contracts and agreements, which controlled the relationship of the defendants with many other parties similarly situated with the plaintiff's assignors. These contracts, or one of them, as an example, is attached to and made a part of the complaint.

It is alleged that through the enforcement of these contracts the petitioner's assignors were injured in their business and defendants were enriched thereby. Therefore, is not the essence of the right of action an alleged unlawful contract or agreement and does not the alleged unlawful contract and agreement constitute the basis for the right of action; and, does not the thing in action arise out of the contract within the Federal statute, which created the right and within the state statute which forbids the assignment of a cause of action not arising out of a contract?

Under the allegations of the complaint, the assignors of the plaintiff have suffered a detriment to their property and business and the defendants have been enriched thereby. The basis of the wrong is a contract.

There is nothing in the decisions of the state of Oklahoma construing Section 221, Oklahoma Statutes Annotated, Volume 12, or the relating statute which provides or requires that there must be a violation of the contract, relied upon to create a right of action arising out of a contract.

If a contract is the subject-matter, or the essence and foundation of the right of action, may not its illegality be the basis of an assignable cause of action, the same as if it had been breached, implying a promise to atone. Chicago, R. I. & P. R. Co. v. Bankers' National Bank, 32 Okl. 290, 122 P. 499 and Minnetonka Oil Co. v. Cleve-

land Vitrified Brick Co., 27 Okl. 180, 111 P. 326.

Every defense available to the defendants, prior to the assignment, is available against the plaintiff as assignee. No greater right is conferred upon the plaintiff by assignment than existed prior thereto.

The right of action created by Section 7 of the Sherman Anti-Trust Act arose out of a contract and is, therefore, assignable and the motion to dismiss will be overruled.