Burton S. KNAPP et al., Appellants,

v.

John P. KINSEY et al., Appellees.

John P. KINSEY et al., Appellants,

v.

Burton S. KNAPP et al., Appellees.

Nos. 13355, 13356.

United States Court of Appeals
Sixth Circuit.

Dec. 6, 1957.

George E. Brand and George E. Brand, Jr., Detroit, Mich., for John P. Kinsey and others.

Richard Ford and Arthur W. Sempliner, Detroit, Mich. (Kenneth B. McConnell, Detroit, Mich., on the brief), for Burton S. Knapp and others.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

This is a Stockholders' suit brought by John P. Kinsey and others against Burton S. Knapp and others, individually, and as directors and stockholders of the Monroe Paper Products Company, hereinafter referred to as the Company, charging breach of fiduciary duties on the part of the directors, seeking their removal as directors of the Company, and demanding an accounting for the loss alleged to have been sustained by the Company by reason of said violations of fiduciary duties.[1] The case has been before us previously on certain phases of the litigation. Reference is made to the opinions in those cases for the purpose of showing the history of the litigation and the facts more in de-

---

1. The parties will be referred to herein as plaintiffs and defendants in the District Court.

tail than will be stated here. Appeal of U. S. Securities and Exchange Commission, 226 F.2d 501; Knapp v. Kinsey, 6 Cir., 232 F.2d 458; Knapp v. Kinsey, 6 Cir., 235 F.2d 129, certiorari denied 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86.

Following the death on March 10, 1953, of Alex J. Groesbeck, President of the Company, a director, and the largest single shareholder of the Company, differences arose between some of the stockholders and directors eventually resulting in the present fight for the control of the Company. A Stockholders' Committee was formed by the defendants, which drafted a Voting Trust Agreement, hereinafter referred to as the Trust, which gave to the defendant directors, who were the five Trustees under the Trust, the voting control of the majority of the Company's stock for five years. The present appeal involves the validity of this Trust.

The Trust was dated December 31, 1953. It states as the reasons for its existence that the business interests of the Company required stability and continuity in management in order to properly develop the property and earning capacity of the Company and that the subscribing stockholders believed it to be essential to their interests to protect themselves against the purchase of a majority of the Company shares by parties acting on behalf of other interests. Subscribing stockholders agreed to endorse and deposit their stock certificates forthwith and to receive in exchange therefor Voting Trust Certificates, hereinafter referred to as Certificates, thereby investing said Trustees with the legal title to such stock with the exclusive right to vote such shares of stock at every meeting of the stockholders of the Company during the life of the Trust.

The Trust provided that until and including December 30, 1958, the stockholders would not sell their respective company shares although they were at liberty to deal with their Certificates, and that during that period the Trustees would have the exclusive power to sell said shares of stock, provided that no sale could be made by the Trustees save of all the deposited shares in lump and that no sale should be made at a less price than at the rate of $15 for each share so deposited. The Trustees had the sole discretion to determine the advisability or the desirability of such a sale. Upon the expiration of the term of the Trust without a sale of the stock by the Trustees, the stock was to be returned to the holders of the Certificates upon surrender of said Certificates. There was evidence that the market value of the stock at the time was approximately $10.00 or $10.50 a share.

The present action was filed on February 2, 1954, by the plaintiffs, individually, and as stockholders of the Company, seeking, together with other relief hereinabove referred to, to invalidate the Trust. The plaintiffs were stockholders, but not Certificate owners. While the suit was pending, one of the plaintiffs, The Waterbury Corrugated Container Co., hereinafter referred to as the Waterbury Company, purchased through agents Certificates from depositing stockholders representing 11,797½ shares, paying in some instances as high as $17.00 and $19.00 per share. If these shares of stock were withdrawn from the Trust, the Trust would have been left with less than 50 per cent of the total outstanding stock, and if they were added to the plaintiffs' prior holdings, their total holdings in the Company would exceed 50 per cent.

The Waterbury Company tendered these Certificates to the Trustees and demanded the return of the stock which they represented, claiming that it had acquired through the purchase of the Certificates the right to rescind the Trust because the Certificates were not registered with the Securities and Exchange Commission, and were sold in violation of the Securities Act of 1933, 15 U.S. C.A. § 77a et seq., hereinafter referred to as the Act. Section 5(a) (1, 2) of the Act, Section 77e(a) (1, 2), Title 15 U.S.C.A. A similar claim was made with respect to the so-called Michigan Blue Sky Law, Comp.Laws 1948, § 451.101 et

seq. Sections 19.741–19.773, M.S.A. Plaintiffs were permitted to file on May 3, 1955, their supplemental complaint bringing this issue into the case.

The defendant Trustees filed an answer to the amended complaint, which denied many of the allegations therein, affirmatively stated some of the factual background of the controversy, which they claimed fully justified the formation of the Trust, and contained several affirmative defenses.

A separate answer and counterclaim was filed by the defendants individually and as directors and officers of the Company, which also denied many of the allegations of the amended complaint and affirmatively alleged facts which they claimed gave a more complete picture of the controversy and fully justified their actions. This answer charged that the primary purpose of the plaintiffs in instituting the action was to gain control of the Company and not to correct the alleged wrongs recited in the complaint; that their action was in itself a combination in restraint of trade in violation of the Sherman Anti-Trust Law, 15 U.S.C.A. §§ 1–7, 15 note and the Clayton Act, 15 U.S.C.A. § 12 et seq. and the Michigan statutes; and that the plaintiffs did not come before the Court with clean hands.

The counterclaim charged that about 1950 a group of individuals, including the plaintiffs, entered into a conspiracy to acquire control of the Company for their own interests to the detriment of the general stockholders, and that throughout the years between 1950 and 1953 this group of conspirators used the assets of the Company for their own purposes and to acquire additional stock for the purpose of eventually gaining control. It charged that the purpose of acquiring control was to make the balance of the stock of small import by reason of which they would be able to purchase it at a depressed price, which was a fraud upon the stockholders.

The counterclaim also charged that a further purpose in gaining control was to loot the treasury of the Company, which in September 1953 contained a million dollars in cash and with such cash repay the loan they had made from the Chase National Bank, the proceeds of which were used to purchase large blocks of stock in the Company.

The counterclaim asked that the Court remove Kinsey as a director of the Company, that it enjoin the plaintiffs from acquiring or purchasing further shares of stock of the Company, and that it require them to forthwith dispose of their interest and stock in the Company in blocks not to exceed 5,000 shares each, and to such persons as would have the approval of the Court.

On June 11, 1957, the plaintiffs moved for a partial summary judgment enjoining the defendant Trustees under the Trust from carrying out said Trust, from voting any of the deposited stock and requiring them to cancel all deposits of stock made under the Trust, recall all Certificates issued thereunder and return all deposited stock to the depositing stockholders. Several different grounds were stated in support of the motion which were separately discussed and ruled upon by the District Judge in his opinion hereinafter referred to. But in view of the District Judge's ruling, we will confine our discussion to the alleged violation of the Securities Act.

The defendants filed the affidavit of two of the five Trustees, which stated that there was no issue of fact as to the text of the Trust or that the Certificates were not registered under the Act nor validated by the Michigan Corporation and Securities Commission, but that other assertions of fact in plaintiffs' motion were denied. With respect to the alleged violations of the Act, the affidavit stated that the invitation to join in the Trust was never extended to the general public; that it was addressed to only a limited group of people (approximately 300 named individuals) who were already stockholders of the Company; that most of them were residents of Monroe, Michigan, or its vicinity who were extensively informed regarding the Company's affairs; that more than 80 per

cent of all the Company's stockholders, owning approximately 52 per cent of the Company's outstanding stock, had affiliated themselves with the Trust; and that the Trustees were advised by counsel that under the circumstances present the Trust invitees were "a limited class of informed persons able to fend for themselves" within the ruling of S. E. C. v. Ralston Purina Co., 346 U.S. 119, 125, 73 S.Ct. 981, 97 L.Ed. 1494, so that the transaction was not a public offering. The affidavit also stated that the plaintiffs were not original holders of Certificates or Certificate holders at the time when this action was commenced, but while this suit was pending they bought some of the Certificates with full knowledge of the fact that said Certificates had not been registered under the Securities Act. It also stated that no action to set aside the Trust had been brought by any member thereof within one year after the issuance of his Certificate, nor had any action allowed by the Securities Act ever been brought by any person at any time.

Following a hearing on June 26, 1957, the District Judge handed down an opinion on July 30, 1957. Kinsey v. Knapp, D.C., 154 F.Supp. 263. In it he reviewed plaintiffs' contention that the Trust was void, because it (1) violated the Michigan Restraints of Trade Law, Comp. Laws 1948, §§ 445.701(5), 445.708, (2) violated the Sherman Anti-Trust Act, (3) violated the Michigan Common Law against Restraints on Alienation of Property, (4) placed each director in an inconsistent position as director and trustee in violation of his fiduciary duties as the former, and (5) because the defendants, in creating the Trust, violated Section 78cc, Title 15 U.S.C.A. and Rule X–10B–5 of the Securities Exchange Commission, which declare that the use of any artifice or device to defraud or the making of any untrue statement renders the contract void. Each of these contentions was rejected. With reference to grounds 4 and 5, the District Judge was of the opinion that factual issues were in dispute which prevented disposi-

tion of them on a motion for summary judgment.

However, the District Judge also ruled that the Trust was voidable because of the failure to register the Certificates under the Securities Act of 1933 and the Michigan Blue Sky Law, and that the plaintiffs, although they were assignees of the certificates, were in a position to challenge it. A partial final judgment, intended to be appealable in accordance with the provisions of Rule 54(b), Rules of Civil Procedure, 28 U.S.C.A., was entered on August 1, 1957, which held the trust to be not void but voidable by the depositing stockholders and by plaintiff the Waterbury Company. The judgment directed that prior to September 1, 1957, upon written request of any depositing stockholder, or his assignee or vendee including plaintiff the Waterbury Company, and upon surrender of the Certificate, the Trustees should surrender and deliver the shares of stock deposited, and in the case of an assignee or vendee the Company should issue a new stock certificate upon surrender of the stock so returned to the assignee or vendee. The judgment also directed that an annual meeting of the stockholders of the Company be held during September 1957 and provided that any depositing stockholder or assignee who did not surrender his certificate and request return of the deposited stock prior to September 1, 1957, would be deemed to have given proxy authority to vote such stock to the trustees. Jurisdiction was reserved of all matters not adjudicated therein.

The defendant trustees filed Notice of Appeal from this judgment on August 2, 1957. On August 6, 1957, Chief Judge Simons of this Court granted a stay of proceedings pending appeal upon the execution of a supersedeas bond in the amount of $100,000, which bond was executed and filed on August 9, 1957.

On August 6, 1957, the plaintiffs filed a cross appeal, by which they contend that the District Judge erred in holding that the Trust was not void, and that certain findings of fact made by the

District Judge were clearly erroneous. The defendants have moved in this Court to dismiss the cross appeal on the ground that one who secures by a judgment the relief he seeks can not maintain an appeal to reverse or modify the judgment or to review the proceedings on which it is founded. Mach v. Abbott Co., 8 Cir., 136 F.2d 7, 10. Although the plaintiffs were successful in having their motion for summary judgment sustained, they claim that the cross appeal was necessary in order to avoid the possibility of a successful claim of res adjudicata as to such questions being made in subsequent proceedings.

On this appeal, the defendants concede that under Sections 2, 5 and 6 of the Act, the Certificates were unregistered securities sold by an issuer in interstate commerce, Sections 77b, 77e, 77f, Title 15 U.S.C.A. but contend that they were exempted transactions under Section 4 (1) of the Act, Section 77d, Title 15 U.S.C.A., which exempts "transactions by an issuer not involving any public offering." The District Judge rejected this contention. That is the issue on this appeal.

The Act does not define the scope of Section 4(1)'s private offering exemption. The Supreme Court in discussing the exemption said in S. E. C. v. Ralston Purina Co., supra, 346 U.S. 119, 124–127, 73 S.Ct. 981, 97 L.Ed. 1494, that the design of the statute was to protect investors by promoting full disclosure of information thought necessary to informed investment decisions, that the focus of inquiry should be on the need of the offerees for the protection afforded by registration, that the application of the exemption should turn on whether the particular class of persons affected needs the protection of the Act, and that an offering to those who are shown to be able to fend for themselves is a transaction not involving any public offering. It quoted with approval from the opinion in Securities and Exchange Commission v. Sunbeam Gold Mines Co., 9 Cir., 95 F.2d 699, 701, to the effect that to be public an offer need not be open to the whole world and the statement therein, "To determine the distinction between 'public' and 'private' in any particular context, it is essential to examine the circumstances under which the distinction is sought to be established and to consider the purposes sought to be achieved by such distinction."

In Campbell v. Degenther, D.C., 97 F.Supp. 975, 977, the Court, in holding a transaction not to be a public offering, said that the principal factors which determine a public offering have been construed to include: (a) the number of offerees and their relationship to each other and the issuer, (b) the number of units offered, (c) the size of the offering, and (d) the manner of the offering.

The foregoing authorities indicate that a decision of this issue involves a thorough development of the factual situation surrounding the offerees. Defendants' main contention on this appeal is that the District Judge should not have decided the issue involving the validity of the Trust upon summary judgment proceedings, but that they were entitled to fully develop this issue through the usual trial procedure.

Summary judgment is authorized under Rule 56(c), Federal Rules of Civil Procedure, "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Plaintiffs contend that although there may be a genuine issue of fact with respect to most of the relief sought by them, there was, however, no genuine issue of fact with respect to the validity of the Trust and that the District Judge was authorized to decide it on the undisputed facts as a matter of law.

The construction and applicability of the summary judgment rule has been before us on several previous occasions. In Begnaud v. White, 6 Cir., 170 F.2d 323, 327, we said, "The authorities indicate that the trial judge should be slow in passing upon a motion for summary judgment which would deprive a party of his right to a trial by jury

where there is a reasonable indication that a material fact is in dispute," citing Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. In Lloyd v. United Liquors Corp., 6 Cir., 203 F.2d 789, 793, we quoted with approval from the opinion in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, as follows, "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. * * * Such a judgment, wisely used, is a praiseworthy and time-saving device. But, although prompt despatch (sic.) of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than the delay." Other cases in which we held that summary judgment proceedings did not afford the losing party an adequate opportunity to develop the facts and should not have been used are Estepp v. Norfolk & Western Railway Co., 6 Cir., 192 F.2d 889; Bellak v. United Home Life Insurance Co., 6 Cir., 211 F.2d 280, 283, and Hoy v. Progress Pattern Co., 6 Cir., 217 F.2d 701, 704.

In Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394, the Court said, "It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits." The opinion further stated that a motion for summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. (Cases cited.) And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. (Cases cited.)" In Griffeth v. Utah Power & Light Co., 9 Cir., 226 F.2d 661, 669, the Court said, "Resort to summary judgment procedure is futile where there is any doubt as to whether there is a fact issue. All doubts upon the point must be resolved against the moving party."

In Kennedy v. Silas Mason Co., 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, a case which seems to be applicable to the present controversy, the Supreme Court said, "We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice." Continuing, the Court said, "We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide." The District Judge in the present case [154 F.Supp. 270] apparently had the same thought when he stated in his opinion, "We do not in this opinion decide anything on the facts. We do not hold that it is not possible that the proof might alter our decision as to whether or not this trust agreement is void or voidable on the facts."

As shown by the foregoing review of the pleadings and the opinion of the District Judge, this case is not a simple case. The amended and supplemental complaint comprises 58 pages of appellants' appendix. The Voting Trustees' answer comprises 28 pages. The answer and counterclaim of defendants as individuals and as directors and officers of the Company comprises 23 pages. The

issues are numerous and complex, both factual and legal. The opinions in the prior reviews by this Court disclose the intensity of the litigation by the respective parties. It involves several hundred thousands of dollars. A former trial in which a partial final judgment was rendered and subsequently reversed on review started October 12, 1954, and continued until June 2, 1955. The transcript consisted of approximately 10,000 pages. Since that review the plaintiffs have served upon defendants 928 requests for admission of facts, of which only 317 were admitted and an additional 168 partially admitted. There are 348 deposition exhibits and an additional 520 trial exhibits, the genuineness of which, in most instances, has been admitted.

It is difficult to divorce the issue of the validity of the Trust from the rest of this litigation. It is closely tied in with the attempt of the plaintiffs to remove the defendants as directors for violation of their fiduciary duties. The defendants by their counterclaim have charged the plaintiffs with an illegal conspiracy to gain control of the Company and to loot its treasury in fraud of the rights of the stockholders. The present judgment as a practical matter would give control of the Company to the plaintiffs without giving the defendants their day in Court to prove their charges that the plaintiffs by their conduct should be barred from taking over control of the Company. In the ultimate decision of this case, even if the Trust is declared invalid, it may be advisable upon a full consideration of all the facts to give some different form of relief than what is now provided by the partial summary judgment. In fact, both parties in their appeal and cross appeal complain of the exact form of relief provided by the present judgment. The District Judge in shaping his decree stated that his Court was a court of equity. Yet the defendants have charged that the plaintiffs have not come into court with clean hands. That issue has not been tried out. In the welter of charges and counter charges that exist in this case we think it necessary that the case be heard and considered as a unit with the opportunity given to all the parties to fully develop the complete factual situation. Kennedy v. Silas Mason Co., supra, 334 U.S. 249, 256–257, 68 S.Ct. 1031, 92 L.Ed. 1347.

There are other aspects of this case which support us in so ruling.

In addition to the question of whether there was a public offering, there is another question involved, which does not appear to us to have been specifically disposed of. Is the relief granted by the District Judge available to a purchaser of the security from the original owner, the purchaser knowing at the time of the purchase that the registration provisions of the Act have not been complied with? The Supreme Court has stated that the clear legislative purpose of the Act was "protection of innocent purchasers of securities" and that the design of the statute "is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 43, 61 S.Ct. 414, 417, 85 L.Ed. 500; S. E. C. v. Ralston Purina Co., supra, 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494. See also: Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Deckert, 3 Cir., 123 F.2d 979, 984. Giving full consideration to the motives and purposes of the plaintiffs in their purchase of the Certificates and to the knowledge which they had of the Company's financial condition and affairs, about which no doubt there is considerable dispute, we are faced with the important question of determining whether the plaintiffs fall within the class of investors the statute is designed to protect. We think that this phase of the question is one that should be thoroughly developed and determined by the usual trial procedure before a final ruling is made on the present phase of the case.

There are also some legal questions which should be considered and ruled

upon by the District Judge before the alleged invalidity of the Trust under the Securities Act is reviewed by this Court. Defendants contend that any cause of action accruing to the original owner of a Certificate by reason of the failure to register the Certificates was not assignable to a subsequent purchaser of the Certificate, by reason of Section 12(l) of the Act, Section 77(l), Title 15 U.S.C.A. Wogahn v. Stevens, 236 Wis. 132, 294 N.W. 503, 133 A.L.R. 1033, and Joseph v. Farnsworth Radio & Television Corp., D.C., 99 F.Supp. 701, affirmed 2 Cir., 198 F.2d 883, are cited in support of this contention. However, see also: Mills v. Sarjem Corp., D.C.N.J., 133 F.Supp. 753, 761; Momand v. Twentieth-Century Fox Film Corp., D. C.W.D.Okl., 37 F.Supp. 649. The section of the Act referred to is subject to the construction that the cause of action is limited to the original owner, with a right to rescission if he still owns the security and a claim for damages if he is no longer the owner. This provision of the Act has not been construed by the District Judge. Also involved as possible defenses, which do not appear to us to have been specifically disposed of by the ruling below, are the Statute of Limitations, Section 13 of the Act, Section 77m, Title 15 U.S.C.A. and the contention that the alleged cause of action was not acquired by the plaintiffs until after the institution of the suit. American Bonding & Trust Co. v. Gibson County, 6 Cir., 145 F. 871, 874. These defenses may or may not involve any factual issues. If not, they could be disposed of in a summary judgment proceeding, but the absence of any specific disposition of them strengthens our conclusion that this case is not ready for the entry of a final judgment even on this limited phase of the controversy.

We are of the view that plaintiffs' motion for partial summary judgment should have been overruled. In view of our disposition of the case, appellants' motion to dismiss appellees' cross appeal is overruled. The judgment of the District Court is vacated and the case remanded for further proceedings in the District Court in conformity with the views expressed herein, without prejudice to any of the parties hereto by reason of any of the rulings contained therein.