[Civ. No. 4360.   Third Appellate District.—November 4, 1931.]

SOUTHERN SURETY COMPANY (a Corporation), Respondent, v. BANK OF LASSEN COUNTY (a Corporation) et al., Appellants.

J. E. Pardee and J. A. Pardee for Appellants.

Ernest T. Hall and George A. Work for Respondent.

TUTTLE, J., *pro tem.*—This is an action brought upon contract. Upon trial by the court, judgment was rendered against each of the defendants in the sum of $3,371.82. The appeal is taken from the judgment.

The facts are undisputed. Baxter Creek Irrigation District and Tule Irrigation District were and are irrigation districts organized under the laws of California. Their water supply is owned jointly by the two districts, and is derived from the Eagle Lake Water System. During the year 1924, certain work was done under contract to improve this water system, but through faulty engineering, little benefit was derived therefrom. At that time, bond interest coupons, due July 1, 1924, were unpaid, and warrants of both districts were then outstanding and unpaid.

On October 11, 1924, one Edward Whaley submitted to the boards of directors of the two irrigation districts, a bid for the construction of certain proposed works at Eagle Lake, to remedy the defects in the prior work. This bid or proposal contained the following provision: "The districts shall, before the final execution of said contract, furnish to the undersigned satisfactory assurances in writing that any and all district warrants that may be issued in payment on account of said contract will, upon presentation, be cashed at par and accrued interest from the date of their registration."

In an effort to comply with the foregoing provision, J. A. Pardee, secretary of both districts, interviewed three banks relative to the purchase of warrants which were to be issued to Whaley for his work under the proposed contract. Anglo-California Bank of San Francisco agreed to take $25,000 worth of such warrants, but insisted that the local banks

(defendants herein), handle some of them. Thereafter, each defendant bank addressed the following letter to Mr. Pardee:

"Nov. 12, 1924.

"J. A. Pardee, Secty. Tule and Baxter Creek Irrigation Districts,

"Susanville, California.

"Dear Sir: Confirming our conversation of recent date we wish to state that we will handle $7500.00 of the warrants of Tule and Baxter Creek Irrigation Districts issued in part payment of work to be done by Edward Whaley in performance of contract between him and your districts for the lowering of approach cut and tunnel at Eagle Lake, upon the understanding that Lassen Industrial Bank will handle a similar amount of said warrants, and upon the further understanding that the first $25000.00 of warrants issued by the districts to Edward Whaley for such purpose, shall be handled by Anglo-California Trust Company of San Francisco. It is also to be understood that any moneys which may be recovered by the districts from Grant Smith & Company, on account of the claim the districts have against said Company, shall, after payment of bond interest coupons of Baxter Creek Irrigation District, which became due July 1, 1924, and which have not yet been paid, be used by the districts in taking up their warrants now outstanding.

"Yours very truly,

"C. H. BRIDGES, Cashier."

And the one from the Lassen Industrial Bank being as follows:

"Nov. 13, 1924.

"J. A. Pardee, Secty. Tule and Baxter Creek Irrigation Districts,

"Susanville, California.

"Dear Sir: Confirming our conversation of recent date we wish to state that we will handle $7500.00 of the warrants of Tule and Baxter Creek Irrigation Districts issued in part payment of work to be done by Edward Whaley in performance of contract between him and your districts for the lowering of approach cut and tunnel at Eagle Lake, upon the understanding that Bank of Lassen County will handle a similar amount of said warrants, and upon the further understanding that the first $25000.00 of warrants issued by the districts to said Edward Whaley for such purpose,

shall be handled by Anglo-California Trust Company of San Francisco. It is also to be understood that any moneys which may be recovered by the districts from Grant Smith & Company, on account of the claims the districts have against said Company, shall, after payment of bond interest coupons of Baxter Creek Irrigation District, which became due July 1, 1924, and which have not yet been paid, be used by the districts in taking up their warrants now outstanding.

"Very truly yours,

"JULES ALEXANDER, President."

It was stipulated at the trial that Whaley relied upon these letters, and but for them, would not have entered into the contract, and that both defendants knew this. It was also stipulated that the word "handle", as used in the letters, should be construed as "buy at par".

Thereafter, on November 18, 1924, Whaley and the two districts signed the contract mentioned, and the former commenced work thereon. He was unable to complete performance, and plaintiff, Southern Surety Company, which had executed a faithful performance bond, undertook to, and did actually complete the contract. The work was accepted by the districts, at a cost to plaintiff of some $9,000. An assignment of the contract was executed by Whaley to plaintiff. Prior to May 24, 1926, each of the defendants bought from Whaley warrants of the face value of $4,900. Thereafter plaintiff presented to each defendant warrants in the sum of $2,600, but payment was refused. The judgment against each defendant is made up of said sum of $2,600, with interest thereon.

It also appears, and the court found, that after each defendant had cashed $4,900 worth of warrants, it was instructed by the superintendent of banks of California, not to pay any more of said warrants.

■ It is contended by appellant that the complaint fails to state a cause of action, in that the contract with Whaley was *ultra vires*. The facts set forth in the complaint are the same as those disclosed above in this opinion. "It may be conceded," states appellant in his brief, "that the warrants of Irrigation Districts were of the character of securities which, under the law, the defendants could buy, but such being true, is the contract, the letters, one of purchase or of guaranty? If the contract is one of pur-

chase, then it may be within the powers of the banks, and enforceable, but if it is a contract of guaranty, it is beyond their powers and void."

As we view the situation, the transaction between the banks and the irrigation districts was a contract, made and entered into expressly for the benefit of Whaley, and which could be enforced by him or his assignee. (Sec. 1559, Civ. Code.) A guaranty is defined in section 2787 of the Civil Code as follows: "A guaranty is a promise to answer for the debt, default or miscarriage of another person." We find nothing in the wording of the agreement, or in the conduct of the parties which indicates that the banks' agreement to purchase these warrants was conditional upon the failure or default of anyone else to pay for the work, or to buy the warrants. As we view it, defendants simply agreed to buy the warrants as they might agree to buy bonds, negotiable paper, or other securities. There was no promise made to Whaley directly, as a creditor, under a contract of guaranty. The banks did not say to Whaley, "We will pay the warrants in the event the Districts fail to do so." The letters of the banks constituted an original promise, and the transaction lacked the essential elements of a contract of guaranty. "If it can be seen that the person sought to be charged is primarily liable, prior to the breach of the contract or duty by someone else, the contract in question is an original promise." (28 C. J., p. 887.) When the warrants were issued to Whaley, he was under no duty to present them to the districts. His cause of action against defendants was not dependent upon a breach of contract or duty upon the part of the districts. We believe that appellant has confused the principles governing a contract made for the benefit of a third party, with those applying to a contract of guaranty. If it had been a guarantee, payment by the banks would have been made contingent upon refusal of the districts to pay. As a matter of practical construction, the record shows that the warrants which *were* paid were never presented to the district, but were presented for payment to the banks upon being issued. We conclude, therefore, that the contract was not one of guaranty, but an original promise, and hence not *ultra vires*, and that the complaint is not open to this objection.

It is further contended that the contract is conditional in this: that the promise of the Bank of Lassen County to buy was made upon the express condition that the Lassen Industrial Bank would buy and *vice versa*, and these conditions not having been met, neither bank was obligated to buy. In other words, that such promises were conditions precedent. The language used in each letter states that the writing bank will buy *upon the understanding* that the other bank will buy. As we construe the letters, each bank, in effect, promised that it would buy the warrants if the other bank *would agree* to do likewise. The interpretation adopted by appellants would, in our opinion, be unreasonable, and lead to an absurdity. "The language of a contract governs its interpretation so far as it is clear and explicit, and *does not involve an absurdity.*" (*Jackson* v. *Puget Sound Lumber Co.*, 123 Cal. 97, 55 Pac. 788, 790], citing sec. 1638, Civ. Code.) Each bank, if the contention of appellants is to be upheld, could have stood back and bowed to the other, saying, "You first," and thereby rendered the entire contract nugatory. "A principle of construction well settled is that where one construction would make a contract unusual and extraordinary, and another construction, equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail." (*Stoddart* v. *Golden*, 179 Cal. 663 [3 A. L. R. 1060, 178 Pac. 707].) We are satisfied that the real intent was that each bank should *bind itself* to purchase the warrants, and when all had done so, the condition was performed and fulfilled. ▮ We believe that where a contract admits of two constructions, the court ought to adopt that which is most equitable and which will not give an unconscionable advantage to one party over the other. (*Allemong* v. *Augusta Nat. Bank*, 103 Va. 243 [48 S. E. 897].) The point is without merit.

It is contended that the trial court erred in overruling a special demurrer, based upon the grounds, first, that the defendants were improperly joined as defendants, and second, that two separate causes of action are improperly joined in the complaint, and not separately stated. As to the first ground, defendants were properly joined because they were liable under the same contract. As to the second ground, only one cause of action was stated, to wit, an action upon the contract. Assuming that there is some merit in the

position of appellants, they have not shown that any prejudice resulted from the alleged error.

As we have stated, the undisputed facts show that upon the signing of the letters by defendants, Whaley executed the contract with the districts, and commenced work, and that he would not have done so if these letters had not been signed. Both of the defendants were aware of these facts. Neither justice nor equity should now permit the defendants to escape the consequences of their own voluntary act, and repudiate a promise which had been acted upon by a third party to his detriment.

The judgment is accordingly affirmed.

Plummer, J., and Preston, P. J., concurred.