[Civ. No. 6263.   Third Appellate District.—November 27, 1939.]

VIVIAN STALEY, Respondent, v. J. A. McCLURKEN, Appellant.

Taft & Spurr for Appellant.

H. L. Preston and Lilburn Gibson for Respondent.

THOMPSON, J.—The defendant, J. A. McClurken, has appealed from a judgment of $316.69 which was rendered against him in a suit for conversion of personal property. Another person was joined as defendant, but has not appealed from the judgment.

It is contended the findings and judgment are not supported by the evidence, chiefly because a large portion of the claim was based on assignments of choses in action by other persons who were the owners of portions of the property at the time of the conversion; and that the complaint fails to state a cause of action for the same reason. It is also urged the court erred in receiving oral evidence to identify the property which was leased.

The plaintiff is the owner of 142 acres of timber land in Mendocino County, containing a shingle mill, several cabins and other buildings, together with certain machinery and equipment connected therewith. Prior to September, 1936, she was living with her mother and sister in a large cabin on the premises in which she had bedding, linen and wearing

apparel of the alleged value of $105.33. Her mother, Mrs. C. F. Staley, owned dishes, cooking utensils and furniture in the cottage of the alleged value of $82.93. Her sister, Gladys Gallaher, also owned bedding, cooking utensils, a banjo, phonograph, dishes, a quantity of canned fruit, and groceries in the cabin of the alleged value of $225.43. September 2, 1936, the plaintiff leased the real property, mill and equipment to the defendant, McClurken, for a term of ten years. He took possession November 11, 1936. The written lease provides in part:

"I hereby lease all my real & personal property . . . [specifically describing the real property, but failing to enumerate any personal property] consisting of 142 acres of timber land and one complete shingle mill as inspected by second parties, also all buildings and other equipment including roads and rights of ways."

About the time the lease was executed, the plaintiff, her sister and her mother temporarily left the large cabin in which they lived and stored their personal property. The door was fastened with a padlock. When the lessee took possession of the premises on November 11, 1936, without consent of the plaintiff, her mother or sister, he broke the padlock and took possession of the cabin, together with all of the personal property and effects contained therein. He used the furniture, dishes, cooking utensils, groceries and canned goods. He either threw the personal clothing and effects out, or dumped them in an old machine shed where they were damaged or lost. The plaintiff said he scattered their clothing and personal effects about the premises. After demand upon the lessee to restore the property in question and his refusal to do so, assignments of their choses in action to sue for and collect damages for converting their portion of the personal property contained in the cabin were executed by the mother and sister to plaintiff. This suit in conversion was then commenced.

The complaint was couched in three counts. The first cause of action alleged the conversion of plaintiff's own personal property. The second one charged the conversion of Mrs. C. F. Staley's personal property, and alleged an assignment of her claim therefor to the plaintiff. The third count charged the conversion of Gladys Gallaher's property and alleged an assignment of her claim to plaintiff. The prayer

asked for judgment for the aggregate value of the properties of the three individuals. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in every essential respect. A judgment was accordingly rendered against Mr. McClurken for the sum of $316.69. From that judgment this appeal was perfected.

The appellant contends that since this action is founded on tort for the wrongful conversion of personal property it was necessary for the plaintiff to prove she was the owner of the property, or at least that she was entitled to the immediate possession of it *at the time of the conversion,* and that this suit for damages for conversion of that portion of the property which belonged to her sister, Gladys Gallaher, and her mother, Mrs. C. F. Staley, therefore, could not be maintained on their mere assignments of choses in action which were executed after the conversion was accomplished. It is true that most of the property involved in this suit belonged to the mother and sister of plaintiff at the time of the conversion. Their portion of the personal property was never sold or transferred to the plaintiff, but their choses in action to sue for and collect damages on account of the conversion were duly assigned to the plaintiff before this suit was commenced.

We are of the opinion the right to maintain an action for conversion of personal property may be based on an assignment of a chose in action subsequently executed. (Sec. 954, Civ. Code; *Morris* v. *Standard Oil Co.,* 200 Cal. 210 [252 Pac. 605] ; *Stapp* v. *Madera Canal & Irr. Co.,* 34 Cal. App. 41 [166 Pac. 823] ; *Jackson* v. *Meinhardt,* 99 Cal. App. 283, 290 [278 Pac. 462] ; 3 Cal. Jur. 254, sec. 15.) It is not necessary that the assignment shall also transfer title to the property or the possession thereof. (*Stapp* v. *Madera Canal & Irr. Co., supra.*) In the case last cited it is said in that regard, on page 46 of the report:

"The objection to the assignment secondly stated, viz.: That claims for damages to real property cannot be assigned without also assigning or transferring with the claim the title to or the possession of the property damaged, is also untenable."

Section 954 of the Civil Code provides in part that:

"A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

██ The rule is well established in California that while claims for damages for personal injuries growing out of torts, such as assaults, slander, malicious prosecution, or false imprisonment, may not be assigned, *injuries* to property may be assigned. The distinction between assignable and non-assignable causes arising in tort is determined by survivorship of the action after the death of the injured party. If the claim survives the death of the party it is assignable, but if it expires with his death it is not assignable. The California rule recognizes the fact that since the property does survive the death of the owner thereof, injury to the property growing out of a tort may be prosecuted by his representatives or by his assignee. (3 Cal. Jur. 256, sec. 15.)

In support of his contention that a cause of action for conversion growing out of a tort may not be assigned, the following authorities are relied on by the appellant: 2 Cooley on Torts, (3d ed.) 848, *General Motors Acceptance Corp.* v. *Dallas,* 198 Cal. 365, 370 [245 Pac. 184], *Hunt* v. *Hammel,* 142 Cal. 456 [76 Pac. 378], *Thomsen* v. *Culver City Motor Co., Inc.,* 4 Cal. App. (2d) 639, 646 [41 Pac. (2d) 597], *McCoy* v. *Northwestern Casualty & Surety Co.,* 3 Cal. App. (2d) 534, 537 [39 Pac. (2d) 864], *Winne* v. *Ford,* 88 Cal. App. 308, 312 [263 Pac. 545], *Covington* v. *Grant,* 82 Cal. App. 749 [256 Pac. 213], *National Bank of New Zealand, Ltd.,* v. *Finn,* 81 Cal. App. 317, 340 [253 Pac. 757], and *DuPuy* v. *Shay,* 127 Cal. App. 476 [16 Pac. (2d) 158]. In most of these cases the general rule with respect to conversion is stated that to maintain the action for damages the plaintiff must show either ownership of the property, or the right to immediate possession thereof *at the time of the conversion.* The preceding cases are not in conflict with what we have said regarding the right to maintain an action for conversion based on an assigned chose in action. Most of those cases involved the right to maintain a suit based on an established lien on the property. They may all be reconciled with the established rule previously stated by holding that the language employed to the effect that it is necessary for the plaintiff to show either ownership of the property or the right to immediate possession *at the time of the con-*

*version* means that the *owner of the property* must have either title or the right of immediate possession thereof. It is neither necessary for an assignee of a chose in action, under such circumstances, to show that he is the owner of the property nor that he is entitled to the possession thereof at the time of the conversion. In the present case the evidence does show that both assignors were the owners of and entitled to the immediate possession of their respective properties. That showing meets the requirements of the law.

■ Parol evidence was competent to explain, but not to change, the express terms of the lease with respect to the identity or description of the personal property intended by the respective parties to be included in the demise. (4 Jones Commentaries on Evidence (2d ed.) 2835, sec. 1552.) It would be unreasonable to construe the lease to mean that plaintiff was including therein the table linen, bed linen, dress goods and personal effects described in exhibit "A" attached to the complaint. The following language of the written lease, "I hereby lease *all my real and personal property*" is specifically explained by that document. It is followed immediately by an explanation of what personal property was intended to be thereby demised. It refers only to "equipment" used for cutting and sawing timber and in operating the shingle mill. It reads, "*consisting of* 142 acres of timber land and one complete shingle mill as inspected by second parties, also all buildings *and other equipment* including roads", etc. Clearly, the linen and personal effects left in the large cabin were not included in the term "all my real and personal property, *consisting of* . . . and *other equipment*". In 10 California Jurisprudence 946, section 210, it is said:

"While oral evidence is not admissible to vary the terms of a writing, yet it may be admitted for the purpose of identifying and applying the terms to the subject matter in cases of uncertainty. This applies to sales of personal property."

If it be assumed there is no uncertainty or ambiguity in the language of the lease with respect to the description of personal property demised, it follows that none was conveyed except "equipment" for use in cutting and manufacturing timber and in operating the shingle mill, and the parol evidence was therefore harmless.

Certainly the oral evidence was competent to show that certain personal property which was left in the cabin did not belong to the plaintiff, and therefore could not have been included in the lease, but on the contrary that it actually belonged to the sister and the mother of the plaintiff. The plaintiff had no authority to lease their property. The court did not err in admitting oral evidence to identify the personal property covered by the lease.

■ Since the aggregate amount of damages, including the two assigned claims, for which the plaintiff brought suit, exceeded the sum of $300, the superior court had jurisdiction to try and determine the cause. (*Hammell* v. *Superior Court,* 217 Cal. 5 [17 Pac. (2d) 101]; *Burke* v. *Maguire,* 154 Cal. 456 [98 Pac. 21]; 7 Cal. Jur. 692, sec. 78.) For the same reason, the complaint states a good cause of action cognizable by that court.

■ The evidence adequately shows that the appellant entered upon the timber property on November 11, 1936, and broke a padlock fastening the door of the large cabin in which the personal property was stored and converted it to his own use some time between that date and the first of the following year. The court found that he converted the property on or about December 27, 1936. That finding is adequately supported by the evidence. There is some confusion regarding the exact date upon which the defendant exercised dominion over the property, but that conflict is immaterial. The time of conversion was a question for the determination of the trial court.

The defendant did not actually take and use all of the property himself. Some of it was taken from the cabin where it was stored and thrown out or placed in an old warehouse where it was damaged or destroyed. To constitute conversion it is not necessary that the defendant shall actually appropriate and use the property for his own benefit. It is sufficient if he merely wrongfully exercises dominion and control over it without the consent and to the detriment of the owner thereof. Conversion lies against one who without the consent of the owner wrongfully exercises dominion or control over his property detrimental to and in conflict with the right of possession or vested title which the owner has therein. (*Edwards* v. *Jenkin,* 214 Cal. 713 [7 Pac. (2d) 702]; *Poggi* v. *Scott,* 167 Cal. 372 [139 Pac. 815, 51 L. R. A.

(N. S.) 925]; *McCaffey C. Co. v. Bank of America*, 109 Cal. App. 415 [294 Pac. 45]; *Vagim v. Haslett Warehouse Co.*, 131 Cal. App. 197 [20 Pac. (2d) 992]; *Lusitanian-American Development Co. v. Seaboard D. C. Corp.*, 1 Cal. (2d) 121, 129 [34 Pac. (2d) 139]; *Hull v. Laugharn*, 3 Cal. App. (2d) 310, 315 [39 Pac. (2d) 478]; *Watson v. Stockton Morris Plan Co.*, 34 Cal. App. (2d) 393 [93 Pac. (2d) 855].) In the Poggi case, *supra*, it is said in that regard:

"The foundation for the accusation of conversion rests . . . upon the unwarranted interference by the defendant with the dominion over the property of the plaintiff from which injury to the latter results."

The judgment is affirmed.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 27, 1939.