[Civ. No. 4824. Fourth Dist. July 1, 1954.]

L. W. BRAWNER, Respondent, v. MARTIN WILSON et al., Appellants.

Johnson and Johnson for Appellants.

Swing, Scharnikow & Staniforth for Respondent.

MUSSELL, J.—This is an action in unlawful detainer in which plaintiff (lessor) recovered judgment against the defendants (lessees) for possession of the leased property, the amount of rent found to be due, damages for detention, attorney's fees and costs.

The lease, executed October 17, 1951, was for a period of three years and the property involved consisted of 124 acres of farm land in San Diego County. It was agreed that approximately 75 acres of this land was, at the time of the execution of the lease, ready for use and cultivation by the lessees and that approximately 49 acres was to be disced and cleared by the lessor and ready for use and cultivation by lessees on or before July 1, 1952. Lessor agreed to furnish all water reasonably needed by lessees from a well on the property.　　　　It was further agreed that any surplus water from said well not actually consumed by lessees might be used by the lessor and that he should pay lessees therefor at the rate of "60¢ per K.W.H." for the electricity consumed while lessor used the "60 H.P." pump at the well.

Defendants in their answer to the complaint denied that they were ever put in possession of the 49-acre tract; denied owing any rental and affirmatively alleged failure of plaintiff to perform the conditions of the lease and put the 49 acres in condition for use and further cultivation. As a further and separate defense defendants alleged that plaintiff had

not paid lessees the sum of "60¢ per K.W.H." for the use of electricity consumed in pumping water for lessor's purposes and that by reason of such nonpayment by lessor, lessees did not owe any rent for the demised property.

There is substantial evidence in the record supporting the implied finding of the court that plaintiff disced and cleared the 49 acres in the manner specified in the lease. (After trial by the court without a jury, written findings of fact and conclusions of law were waived by written stipulation of counsel.) In this connection plaintiff testified that the entire 124-acre tract was prepared in the same manner and that the easterly part of it (49 acres) was just as well prepared as the westerly part; that he directed his employees to prepare the 49-acre tract just the same as they had the 75-acre tract; that when he talked with defendant Wilson in June and July, 1952, Wilson made no request that plaintiff clear the 49-acre portion or that he, plaintiff, should do anything more or different to the 49 acres.

Henry Conant, who did the work of preparing the land for plaintiff, testified that he worked on the 49-acre portion from November 5th to November 21st, 1951; that when he started his work, the 49-acre portion had been cleared of brush and had been disced the same as the 75-acre portion, except for some large holly bushes; and that he left both portions of the ranch in the same condition when he finished his work. Henry Vogt, who also worked for plaintiff in clearing and leveling the entire tract, testified that in his opinion the 49-acre portion was ready for further cultivation by a farmer after he, Vogt, had finished his work on it.

Defendants introduced evidence to the effect that while the 75-acre portion had been properly prepared for cultivation, the 49 acres had not been so prepared. However, this was a question of fact for the trial court's determination and the only effect of the testimony of defendants' witnesses was to create a conflict in the evidence on this point. Where, as here, there is substantial evidence supporting the judgment, the decision of the court below will not be disturbed. (*Potter v. Pacific Coast Lbr. Co.*, 37 Cal.2d 592, 597 [234 P.2d 16]; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

Defendants argue that the court improperly permitted parol evidence to vary the terms of a written instrument. This argument relates to the provision of the lease that the lessor was to pay lessees "per K.W.H." for electricity consumed while pumping water for lessor's purposes. However, de-

fendants' counsel in cross-examining plaintiff asked the following questions and received the following answers:

"Q. How does it happen in this document you prepared that you agreed to pay Mr. Wilson sixty cents per kilowatt hour for the electricity consumed in there? A. I never intended to pay him on the kilowatt hours. It was for the horsepower. Sixty-six cents for the 60 horsepower motor. I agreed to pay him sixty cents, I believe, and then I was informed by the gas company it would take more than that until they used this amount up and I added another 10% to it. I asked them if 10% would take care of it and they said it would.

"Q. So you feel the agreement is that you pay sixty-six cents? A. Per hour for the use of that 60 horsepower pump.

"Q. Sixty-six cents per sixty minutes? A. That is right."

Plaintiff also testified on cross-examination that he had ascertained that the cost of operation of the pump was approximately 1 cent per horsepower per hour with a possible leeway of 10 per cent above that; that his agreement with the defendants was that he should pay 60 cents per hour of operation, which he voluntarily raised 10 per cent to 66 cents; that he had written and delivered his checks to the defendants on this basis; that defendants made no objection and that the provision in the lease for the payment at the rate of 60 cents per kilowatt hour was "a social error" on the part of the typist who drew up the lease. Defendants also introduced evidence from which it appears that the amount specified in the lease and claimed to be due them for the operation of the pump (60 cents per K.W.H.) was approximately 60 times the cost of operating the pump. An examination of the lease indicates that the parties agreed that the lessor could use any surplus water from the well involved and would pay lessees the cost of electricity used by the lessor in this connection. Obviously the parties never intended payment at the rate of 60 cents per kilowatt hour. Such a construction would involve an absurdity and must be rejected. (Civ. Code, § 1638.) As was said in *Jackson* v. *Puget Sound Lbr. Co.*, 123 Cal. 97, 100 [55 P. 788]:

" 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties.' (Civ. Code, § 1643.) . . .

"But the language of a contract governs its interpretation only so far as it is clear and explicit *and does not involve an*

*absurdity.* (Civ. Code, § 1638.) Language involving an absurdity is rejected,· and so is any. phrase or clause which is inconsistent with the object and intention of the parties. (Civ. Code, §§ 1650, 1652, 1653.) "

Where a contract admits of two constructions, the court ought to adopt that which is most equitable and which will not give an unconscionable advantage to one party over the other. (*Southern Surety Co.* v. *Bank of Lassen Co.*, 118 Cal.App. 149, 154 [4 P.2d 952].) In the trial of the instant case the court remarked that it was obvious that the price was error and defendants' counsel conceded that it was. Defendants by their answer claim that they did not owe plaintiff any rent by reason of the fact that plaintiff did not pay 60 cents per kilowatt hour for electricity used. We find no error in the action of the trial court in admitting evidence as to the intention of the parties as expressed by the lease.

Defendants next contend that the court erred in striking testimony relative to the amount of electricity consumed by the lessor as not being proper in an unlawful detainer action. Defendants argue in this connection that if they had been permitted to show the amount of electricity consumed by the lessor at the agreed rate of 60 cents per kilowatt hour then the amount owed the defendants by plaintiff for electricity under the lease would have amounted to more than the amount alleged to be due plaintiffs as rent. Obviously, it was not the intention of the parties that plaintiff should pay more for the electricity used by him in pumping surplus water than the rental payments on the lease. The evidence shows that he kept a record of his use of the pump and paid defendants by check for the power used at the rate of 66 cents per hour of use; that defendants accepted and retained the checks without objection as to the amounts thereof. Defendants are not permitted to offset the amount claimed to be due them under the erroneous "60¢ per K.W.H." provision of the lease by counterclaim or cross-complaint, this being an unlawful detainer action. (*Schubert* v. *Lowe,* 193 Cal. 291, 294, 295 [223 P. 550]; *Bekins* v. *Trull,* 69 Cal.App. 40, 45, 46 [230 P. 24]; *Arnold* v. *Krigbaum,* 169 Cal. 143 [146 P. 423, Ann.Cas. 1916D 370]; *Smith* v. *Whyers,* 64 Cal.App. 193, 194 [221 P. 387]; *Lakeside Park Assn.* v. *Keithly,* 43 Cal.App.2d 418, 422 [110 P.2d 1055].)

Defendants further argue that the asserted failure of plaintiff to properly prepare the 49-acre tract for use and

further cultivation constituted an eviction by the plaintiff of a substantial portion of the demised realty and released the defendants from their obligation to pay rent. This argument is likewise without merit. The evidence supports the trial court's implied finding that plaintiff did in fact prepare the entire tract for use and further cultivation by defendants as required by the lease. ▮ Furthermore, there was and could be no constructive eviction of the defendants for the reason that they at all times remained and continued in possession of the entire premises. *Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 P. 662, 20 A.L.R. 1363]; *Lori, Ltd.* v. *Wolfe,* 85 Cal.App.2d 54, 65 [192 P.2d 112].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.