[Civ. No. 220. Fifth Dist. Aug. 5, 1963.]

SILL PROPERTIES, INC., Plaintiff and Respondent, v. CMAG, INC., et al., Defendants and Appellants.

T. H. Werdel and Baker, Palmer, Wall & Raymond for Defendants and Appellants.

Bradley, Wagy, Bunker, Hislop & Gibbons and Bruce F. Bunker for Plaintiff and Respondent.

STONE, J.—This appeal is from an adverse judgment on a complaint and a cross-complaint arising out of transactions concerning a lease of real property. Respondent, lessor, agreed to lease real property for restaurant purposes to appellants' predecessors in interest, C. D. May and his wife. The lease, executed December 1, 1954, provided for a 10-year term with an option for an additional 10 years. Respondent was required to do certain remodeling, and lessees agreed to do even more extensive remodeling which cost them approximately $186,000. In addition, the lessees installed trade fixtures of their own at an alleged cost of $151,765.

The lessee's formed a corporation, Cy's Restaurants, Inc., to operate the business, and began operations November 6, 1955. It was never profitable, and about October 15, 1957, Cy's Restaurants, Inc. assigned all of its assets for the benefit of creditors. Under the supervision of the assignee the business continued to lose money, and on May 1, 1959, C. D. May, the owner of the majority of the stock of Cy's Restaurants, Inc., resumed active management. Attempts to sell the business were unsuccessful until September 23, 1959, when appellant Albert L. Goetschalckx acquired the assets of Cy's Restaurants, Inc., exclusive of the lease. Goetschalckx took the business subject to an encumbrance of $43,075 on the fixtures, but he did not assume delinquent rent, as respond-

ent landlord agreed to look to C. D. May and his wife for rent that had accrued prior thereto.

Goetschalckx and May then formed appellant corporation, CMAG, Inc. Goetschalckx transferred to the corporation the assets previously acquired by him and some cash, in exchange for 45 per cent of CMAG, Inc., capital stock. C. D. May assigned the lease of the premises and some cash to CMAG, Inc., for 55 per cent of the stock, in accordance with a lease provision requiring May to own not less than 55 per cent of the stock of any corporation to which the lease might be assigned. On April 1, 1960, Goetschalckx, with the consent of respondent lessor, acquired all of C. D. May's stock in CMAG, Inc., and thereby became sole owner of the corporation which had acquired all of the lessees' interest in the lease.

Through CMAG, Inc., Goetschalckx operated the restaurant business until the premises were substantially destroyed by fire during the night of July 31, 1960. However, on July 12, approximately three weeks before the fire, respondent notified appellant CMAG by letter that the lease was terminated by reason of default in performance of paragraph 11 of the lease. That paragraph concerned payment of rent, but the letter failed to specify the delinquency. Although this notice was legally insufficient and no steps were taken to enforce it, appellant paid respondent $1,200 on account of unpaid rent. The period of time the payment purported to cover was not specified, and respondent accepted the payment without comment.

On August 3, following the fire, respondent notified appellants that the lease was terminated by reason of the default mentioned in the letter notice of July 12, 1960, and because of the fire. On August 8, 1960, appellants demanded in writing that respondent repair the building pursuant to paragraph 5 of the lease, which required lessor to rebuild in case of damage by fire. Respondent refused to repair.

In late August 1960, respondent learned that appellants were removing certain equipment from the premises. On September 10, 1960, an officer of respondent corporation asked Goetschalckx not to remove any fixtures until the rights of the parties were determined. Appellants continued to remove equipment from the building, and on September 14, 1960, respondent filed an action against appellants and secured a restraining order.

Respondent's complaint alleged three causes of action: one for declaratory relief, which was subsequently dismissed; a

second cause of action for conversion of air conditioning equipment and other parts of the realty alleged to have been wrongfully removed from the premises and converted to appellants' use; and a third cause of action for unpaid rent.

Appellants by way of answer denied the allegations of respondent's complaint, and concurrently with the answer filed a cross-complaint for damages predicated upon respondent lessor's wrongful refusal to rebuild the damaged premises as required by the lease. The cross-complaint alleged various items of damage, totaling $566,275.

The original lessees, C. D. May and his wife, were named defendants in the action, but the lower court ordered a separate trial as to them, and the case went to trial between respondent corporation as plaintiff and cross-defendant, and appellants CMAG, Inc., a corporation, and Albert L. Goetschalckx, as defendants and cross-complainants.

The jury returned a verdict for respondent on its second cause of action for conversion, in the sum of $18,042, and on its third cause of action for rent, in the sum of $675.86. On the cross-complaint the verdict was for respondent and against appellants.

The lease provided for attorney's fees under conditions discussed hereinafter; this issue was determined by the court following completion of the jury phase of the case. The court allowed attorney's fees only as to the third cause of action of the complaint for unpaid rent. Judgment was entered pursuant to the verdict of the jury and the order of the court for attorney's fees, and defendants and cross-complainants have appealed. Since Goetschalckx is the sole owner of CMAG, Inc., and their interests are the same, reference to appellants will hereinafter be in the singular.

### THE COMPLAINT

■ *Cause of Action for Conversion.* Appellant contends that the property alleged to have been converted was inadequately described in the complaint and in the instructions to the jury. In this regard, appellant complains also that under the jury's lump sum verdict it is impossible to determine the individual items and the value of each that comprised the jury's verdict, and whether some of appellant's trade fixtures might not have been included in the verdict for $18,042.

■ The description of the personal property alleged in the complaint to have been converted was subject to a special demurrer, but since none was filed on this particular ground, the defect was waived. ■ The pretrial order, although

more specific than the complaint, was nevertheless too general, but, again, appellant waived the defect by not objecting to this aspect of the pretrial order. Criticism of the description of the property in the instruction is without merit. ██ ██ Much evidence was introduced concerning whether items of equipment were trade fixtures and the property of appellant, or fixtures attached to the building and the property of respondent. On this issue the court instructed the jury that:

"The evidence has shown that the items in controversy are air conditioning equipment, plumbing fixtures, electrical switchboards, panels, fixtures and receptacles, doors and hardware. The conversion of property is the wrongful exercise of dominion and control over the property of another, in exclusion or defiance of the rights of the true owner. In this matter, it will, therefore, be necessary to determine the true ownership of the items in controversy."

The categories of equipment in controversy were specified and the determination of which individual items were the property of the lessee and which belonged to the lessor was properly left to the jury. The trial court is under no duty to itemize the evidence in the instructions.

Appellant's complaint that it is impossible to determine which items the jury considered in arriving at its verdict, is not an uncommon one. Yet a jury is not required to itemize its verdict or relate the facts it has found in arriving at its verdict, except when a special verdict may be required; and such was not the case here.

██ Appellant next asserts that there was no substantial evidence that he wrongfully withheld possession of the equipment from respondent, or that he asserted title in himself, or that he repudiated respondent's right of ownership. He argues, first, that he was required as a matter of law to remove the fixtures under the provisions of Civil Code section 1928, which reads: "The hirer of a thing must use ordinary care for its preservation in safety and in good condition."

No authority is cited for the proposition that a lessee is required by Civil Code section 1928 to enter leased premises after substantial destruction by fire, and remove fixtures which are attached to and a part of the landlord's building. Nor is it contended that appellant was aware of the code section at the time he took the equipment from the building. Section 1928 is cited as justification for the taking, not as the reason for the taking. ██ In any event, it is a question

of fact whether the lessee removed the fixtures for the protection of the lessor, or whether he removed them under claim of ownership and exercised dominion over them in repudiation of the lessor's right of ownership.

Appellant makes the further assertion that he was simply complying with the requirements of his fire insurance coverage in storing the property for his and for respondent's benefit. Although the argument bears on appellant's intent, apparently the jury was not persuaded by it.

In support of the verdict, there is evidence that an officer of respondent corporation ordered appellant to stop removing the equipment, that appellant refused and respondent's agent left in a "huff." Respondent then secured a restraining order to prevent appellant from removing any more equipment. From this evidence the jury could have concluded that appellant intended to exercise dominion over the equipment, an exercise of control inconsistent with respondent's right of ownership. (*Staley* v. *McClurken*, 35 Cal.App.2d 622, 628 [96 P.2d 805]; 48 Cal.Jur.2d 548, Acts Constituting Conversion, § 13, p. 548.)

Appellant professes to find error in the court's instructions on the elements of conversion. The court instructed that "The conversion of property is the wrongful exercise of dominion and control over the property of another, in exclusion or defiance of the rights of the true owner." Appellant suggests that the court should have also advised the jury that if appellant in exercising control over the property of respondent had no intention of claiming title, or if the equipment was merely stored for protection and safekeeping, there was no conversion.

A court is required to give instructions embodying all of the law applicable to the issues raised during the trial. But if a court correctly instructs a jury on the law applicable to an issue, as here, it is not required additionally to state the same matter in negative terms. As suggested in *Merrill* v. *Buck*, 58 Cal.2d 552, 563 [25 Cal.Rptr. 456, 375 P.2d 304], if appellant desired a more detailed instruction on the issue, he should have submitted one.

*Cause of Action for Rent.* The substance of appellant's principal defense to the claim for rent is that the roof of the building leaked in several places, that respondent landlord knew of the roof leaks and refused to repair them, that by reason of the leaks portions of the leased premises were unsuitable for use for the purposes for which they were

leased, and that this partial deprivation of use constituted a constructive eviction.

The court did not permit the issue of constructive eviction to go to the jury, and instructed in part that: ". . . any evidence bearing upon the results of a leaking roof are of no consequence with respect to your verdict on the question of rent."

The record supports the reasoning of the trial court. After the rain damage appellant remained in possession of the premises and continued to operate the business therein; no notice or claim of damage or of termination of the lease was given by appellant prior to the destruction of the premises by fire; and appellant failed to raise the issue in this action by way of cross-complaint or counterclaim. These facts are irreconcilable with a claim of constructive eviction. It is of equal significance that on July 12, weeks after the time appellant contends the damage from roof leaks occurred, respondent served a "notice of default" and appellant responded by making a payment on account of past due rent, thereby confirming the tenancy.

In Williston on Contracts, volume 6, third edition, section 892, at pages 646-647, we find the following: "We know of no case sustaining the doctrine that there can be a constructive eviction without a surrender of the premises." (See also 30 Cal.Jur.2d, Eviction, What Constitutes, § 125, p. 265; *Kulawitz* v. *Pacific etc. Paper Co.*, 25 Cal.2d 664, 670 [155 P.2d 24]; *Brawner* v. *Wilson*, 126 Cal.App.2d 381, 386 [271 P.2d 937].)

### The Cross-complaint

Appellant cross-complained for damages for breach of lease predicated upon respondent's failure and refusal to rebuild the premises after the fire. The court instructed the jury that respondent breached the lease by failing to repair, and eliminated all issues except those pertaining to damages.

Several instructions advised the jury as to the rules, the methods, and the various elements to be considered in determining damages under the cross-complaint. These original damage instructions were poorly framed and somewhat conflicting. However, we are not concerned with them because of the following sequence of events: After deliberating for some time the jury sent a note to the court, "To Judge Howden, The jury requests your ruling and instructions to the jury on the cross-complaint. [Signed] Foreman ——" The court thereupon summoned counsel to his chambers and expressed dissatisfaction with the original instructions on the

question of damages pertaining to the cross-complaint, and suggested modifications. A discussion followed, counsel for both sides made suggestions augmenting those of the court, and agreement was finally reached as to the instructions that should be given. The jury was recalled and instructed anew on the method of determining damages as to the cross-complaint. After the instructions had been given, the judge, as he had agreed in chambers beforehand to do, asked all counsel whether there were any objections to the instructions he had given. There were none.

The thrust of appellant's argument seems to be that instructions embodying a different method of computing damages would have been more favorable to him. This is undoubtedly true, but we are impelled, nevertheless, to conclude that there was no error here because the instructions to which all counsel agreed, utilized an acceptable method or formula for determining the issue. Further, no objection was voiced in response to the court's inquiry immediately after the jury was specially instructed.

In view of the unusual circumstances of this case, it is not surprising that we have found no authority in point, but there are two legal principles which are persuasive by analogy. The case of *Durkee* v. *Chino Land & Water Co.*, 151 Cal. 561 [91 P. 389], was concerned with the theory of damages adopted by the parties during the trial. The Supreme Court said, at pages 569-570:

"While parties have a right to insist that damages shall be measured by a recognized legal standard, error cannot always be predicated upon failure to do so. There is no rule of practice which precludes them from trying the question of damages on any theory they see fit. They may adopt any rule which they deem proper, and courts will not interfere of their own motion to compel the adoption of a rule contrary to that which the litigants are satisfied to accept. If they are satisfied, the court will be. When they do adopt such a rule they are bound by it, and neither one will be subsequently permitted to question his own conduct relative to it."

Although our case concerns instructions on damages, the reasoning of *Durkee* is applicable, and the litigants having agreed to the instructions at the trial, cannot now withdraw their approval and assert error.

Another approach to the question is found in the language of *Merrill* v. *Buck, supra*, 58 Cal.2d 552, at page 563. The court there commented that the instruction involved

was a correct statement of the law and that if the defendants desired a more detailed instruction on the subject, it was their duty to propose it. The circumstances here are comparable in that appellant, by agreeing upon which instructions should be given, placed himself in the position of withdrawing his other proposed instructions on the subject. The reasoning of *Merrill* is applicable since the result is the same whether proposed instructions are withdrawn or no instructions are proffered in the first instance.

Appellant makes an additional assignment of error in the instructions on damages, pointing out that the court in speaking of fair rental value of the building, said at one point, ". . . if rebuilt so as to be the same as it was before the fire." Appellant argues that before the fire the roof leaked in several places, the walls were spotted and the floor was warped. It is contended that the jury was misled into believing that respondent was under a duty only to rebuild the premises to this same state of disrepair. However, at the beginning of the questioned instructions the court advised the jury that respondent had the duty "to repair the damaged restaurant following the fire," and upon six occasions while instructing on damages the court used the phrase "if the building had been rebuilt." To argue that the jury understood that they should consider appellant's damages on the basis of a building rebuilt with leaks in the roof, warped flooring and discolored walls is fanciful indeed. ▮▮▮ On the contrary, it must be assumed that the jury gave the instructions a natural and realistic interpretation and correctly applied them to the evidence. (*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 478 [267 P.2d 777].)

▮▮▮ Appellant next asserts that the evidence is insufficient to support the verdict on the issue of damages because respondent's witnesses based their testimony as to value of the lease and as to prospective profits from the business upon the operation of a "fry restaurant" while appellant operated a "first-rate" restaurant with a banquet room, a cocktail lounge and a bar. Respondent's witnesses were cross-examined as to their testimony and as to the reasons for their opinions; and appellant, on his own behalf, submitted evidence contradicting respondent's witnesses. Thus appellant's argument is relevant to the weight of the evidence rather than its admissibility.

▮▮▮ Next, appellant asserts that the court erred by admitting into evidence the profit and loss records of appel-

lant's predecessors. Goetschalckx argues that he is a proficient restaurant operator, but that his predecessors were inept and inexperienced, so that he was prejudiced when the jury was permitted to see the profit and loss records for nearly six years preceding the fire. The admissibility of profit and loss records of the same business under different management cannot here be considered abstractly as an absolute rule of evidence, because of the circumstances peculiar to this case. Appellant testified that the business would earn substantial profits for the remainder of the term of the lease, basing his testimony in part on the location of the property and the nature of the premises. He points out that at the time of the fire there was no other comparable restaurant, banquet room, cocktail lounge and bar in downtown Bakersfield. Since appellant relied upon the location of the property and the exclusive characteristics of the building to support his argument that the lease had a special value, evidence that the same kind of business over a period of years consistently lost money operating at the same location and in the particular building would be admissible as to that issue. Under the circumstances, the questions appellant raises as to the ability of his predecessors to operate the business in relation to past profits or losses, as contrasted with his own competence in relation to projected future profits, goes to the weight of such evidence as it bears upon the alleged uniqueness of the location and of the facilities.

Another alleged error on the issue of damages was the admission into evidence of the minutes of the board of directors of CMAG, Inc. purporting to state the value of the assets purchased by Goetschalckx from Cy's Restaurants. This statement was made pursuant to Corporations Code section 1112, which provides in part, ''The board of directors shall state by resolution its determination of the fair value to the corporation in monetary terms of any consideration other than money for which shares with or without par value are issued. In the absence of fraud in making the determination of value, it shall be conclusive.''

Appellant cites no authority holding that such an extrajudicial declaration is inadmissible. On the other hand, Code of Civil Procedure section 1870, which delineates facts which may be proved on trial, states in part: ''In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: . . . 2. The act, declaration, or omission of a party, as evidence against such party; . . .'' (See also *Bonebrake* v. *McCormick*, 35 Cal.2d 16, 18 [215 P.2d

728] ; Witkin, California Evidence, p. 246; 19 Cal.Jur.2d, Declarations or Admissions Against Interest, § 393, p. 128.)

Appellant's argument that the purpose of Corporations Code section 1112 is to protect the investing public and prevent inflationary or watered corporate stock transactions, does not render the evidence inadmissible. The fact that a declaration is made pursuant to a particular statute does not, per se, render the statement or admission inadmissible as evidence unless the statute requiring the declaration expressly provides such immunity. An admission made pursuant to Corporations Code section 1112 is comparable to an admission made in an income tax return, a copy of which may be received in evidence. (*Webb* v. *Standard Oil Co.*, 49 Cal.2d 509, 513 [319 P.2d 621].) The circumstances under which the declaration or admission was made may be shown, and the weight of the evidence in the light of those circumstances is to be determined by the jury.

 Appellant's final assignment of error on the cross-complaint relates to the forms of verdict submitted to the jury. One form found for appellant and provided for damages. The other form, which the jury used, reads: ''We, the jury find for the cross-defendant Sill Properties, Inc. on the cross-complaint and against the cross-complainant CMAG, Inc.'' This form of verdict, argues appellant, erroneously took from the jury the issue of damages. How the submitted forms of verdict could prejudice appellant on the issue of general damages is not apparent. Manifestly, the jury had to find either for appellant or for respondent as to general damages, and the two forms of verdict provided this choice. Nevertheless, the verdict was erroneously worded in not providing for an award of nominal damages, since appellant unquestionably was entitled to recover nominal damages for the breach of the lease, despite his inability to show that he suffered actual damage. (*Bromberg* v. *Signal Gasoline Corp.*, 130 Cal.App. 469, 472 [20 P.2d 83] ; Civ. Code, § 3360; 14 Cal.Jur.2d § 9, p. 638.)

The question is whether the court's failure to instruct the jury on the issue of nominal damages and submit a verdict providing for nominal damages, together with the jury's failure to award nominal damages, constitute reversible error. In the absence of special circumstances the error would be of no consequence since the law does not regard trifles and courts will not reverse a judgment simply because nominal damages were not awarded. (*Broads* v. *Mead & Cook*, 159 Cal. 765,

769 [116 P. 46, Ann.Cas. 1912C 1125].) Nominal damages were held to be "a trifling sum" in *Price* v. *McComish,* 22 Cal.App.2d 92, 100 [70 P.2d 978]; which case further held $200 to be a substantial judgment. In view of appellant's total claim for damages of half a million dollars on the cross-complaint, a sum of less than $200 would seem to be trifling.

Although a judgment will not be reversed solely because of a failure to award nominal damages for money alone (*Kenyon* v. *Western Union Tel. Co.,* 100 Cal. 454, 458 [35 P. 75]), if other rights are involved these other rights are factors which must be considered in determining whether the error is reversible. (*Sweet* v. *Johnson,* 169 Cal.App.2d 630, 633 [337 P.2d 499]; *Kenyon* v. *Western Union, supra.*)

Appellant contends that nominal damages here would have entitled him to costs under the lease, which provided: "In the event that it shall become necessary to retain an attorney to enforce the terms of this agreement, it is hereby agreed that a reasonable attorney's fee shall be assessed as costs to the successful party."

It is clear from the quoted language that if attorney's fees are to be awarded, it must be as part of the costs. Therefore if appellant was not entitled to costs, neither was he entitled to attorney's fees; and the failure to award nominal damages to appellant would not constitute reversible error. Respondent recovered judgment against appellant for the sum of $18,042 on its second cause of action, and $675.86 on the third cause of action of the complaint. Conceding appellant's right to nominal damages on his cross-complaint, respondent remains the prevailing party in the litigation. (*Dobbins* v. *Horsfall,* 58 Cal.App.2d 23, 27 [136 P.2d 35]; *Moss Construction Co.* v. *Wulffsohn,* 116 Cal.App.2d 203, 204 [253 P.2d 483]; *Shelley* v. *Hart,* 112 Cal.App. 231, 243 [297 P. 82]; Civil Procedure During Trial (Cont. Ed. Bar) (1960) § 23.53, p. 629.) Since respondent was the prevailing party, appellant was not entitled to costs or attorney's fees; therefore the failure to award appellant nominal damages is not reversible error.

The judgment is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied September 3, 1963, and appellants' petition for a hearing by the Supreme Court was denied October 1, 1963.