Alexander HAAGEN, III; Betty Haagen, as trustees of the Alex and Betty Haagen Living Trust, Plaintiffs–Appellants,

v.

SAKS & COMPANY, a New York corporation; Saks, Inc., a Tennessee corporation, Defendants–Appellees.

No. 04–55089.

D.C. No. CV00–13251–JFW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 2005.

Decided Dec. 23, 2005.

622

Alan Z. Yudkowsky, Esq., Deborah Drooz, Esq., Stroock & Stroock & Lavan LLP, Los Angeles, CA, for Plaintiffs–Appellants.

James M. Harris, Esq., Sidley Austin Brown & Wood, Los Angeles, CA, Damon C. Anastasia, Esq., for Defendants–Appellees.

Before CANBY, SILER,* and BERZON, Circuit Judges.

### MEMORANDUM **

Appellants Alexander and Betty Haagen ("the Haagens") appeal the district court's grant of summary judgment on their breach of contract claim and the award of

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

attorneys' fees in favor of appellees Saks & Company ("Saks").

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment. *See Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1047 (9th Cir.1995). We reverse and remand for further proceedings. We recite only those facts essential to our analysis.

■ The Haagens have presented sufficient, undisputed evidence to establish as a matter of law that Saks breached two provisions of the lease agreement the parties entered into in 1995. First, the lease required Saks to keep "full and accurate books" including "all such cash register receipts with regard to gross sales and Net Sales" for three years. Saks breached this provision by failing to keep cash register tapes for September and December of 1997 and June of 1998 and by destroying cash register tapes after only thirteen months. Saks admits that it could not locate three months of cash register tapes and that it prematurely destroyed other tapes. The fact that the information on the tapes could be replicated through electronic data does not excuse Saks' breach of the lease's plain language. *See generally Bank of the W. v.Super. Ct.*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (stating the established principle that "[i]f contractual language is clear and explicit, it governs").

■ Saks also breached the lease's requirement that it immediately pay any deficiency in percentage rent. The lease requires Saks to pay both monthly rent and a percentage rent, which is 3% of any amount of net sales over $20,000,000. The Haagens conducted an audit in 1999 and discovered, in contrast to what Saks had reported, that net sales for 1996 exceeded $20,000,000.[1] The lease provides that if the Haagens discover through an audit a deficiency in percentage rent, then the deficiency is "immediately due and payable with interest. . . ." Although Saks was informed in June of 2000 that it owed percentage rent, it did not tender a check to the Haagens until 2002, after its expert had confirmed the audit's accuracy. This delay violated the lease's provision that the deficiency be paid immediately.

■ The Haagens also presented sufficient evidence to create a triable issue of fact as to whether Saks breached the lease by not tracking mail and telephone orders. The lease requires Saks to track its net sales, which includes "mail, telephone and other orders received at the Premises," and orders received at the East Store and "filled from the Premises." The Haagens' expert reviewed Saks' electronic sales data and concluded that "Saks' accounting system failed to properly account for . . . mail, telephone, or other orders received either at the Premises . . . or such orders received at Saks' existing store in Beverly Hills and filled at the Premises." In rebuttal, Saks does not specify how it tracks mail and telephone orders; it offers only the ambiguous opinion of its expert that Saks' computer accounting system "accurately reflects items necessary to compute Net Sales in the West location." The Haagens' expert's opinion creates a triable

---

1. Saks admits it understated net sales for 1995 through 2000. These understatements caused a breach only in 1996 when net sales exceeded the $20,000,000 threshold that triggers percentage rent. Saks has an obligation under the lease to provide net sales reports and certify that they are accurate. There is no allegation that Saks failed to meet this obligation. Saks' other obligations regarding the reporting of net sales are not triggered unless net sales exceed $20,000,000. Thus, the understatement of net sales, standing alone, does not violate any provision of the lease.

issue of fact as to whether Saks properly tracked mail and telephone orders. *See Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir.1995) (noting that expert opinion can defeat summary judgment if the expert is competent and the factual basis for his opinion is stated in the affidavit).

The Haagens did not present sufficient evidence of any other breaches. Under the most reasonable reading of the lease, Saks was not required to track cross-store sales. There is no probative evidence indicating Saks failed to record its subtenants' sales. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (requiring evidence that is more than "merely colorable" to defeat summary judgment).

We therefore remand for determination whether Saks properly tracked mail and phone orders and for entry of judgment on Saks' two breaches of the lease. Judgment can be entered in the Haagens' favor even though they admittedly have no evidence of actual damages. Under California law, "[w]hen a breach of duty has caused no appreciable detriment to the part[ies] affected, [they] may yet recover nominal damages." Cal. Civ.Code § 3360; *see Sweet v. Johnson*, 169 Cal.App.2d 630, 632, 337 P.2d 499 (1959).

■ Reversal is not thwarted by the California rule that an appellate court cannot reverse and remand "solely because of a failure to award nominal damages...." [2] *Sill Props., Inc. v. CMAG, Inc.*, 219 Cal. App.2d 42, 56, 33 Cal.Rptr. 155 (1963). This rule applies in cases where the only

action to be taken on remand is entry of judgment and the award of nominal damages. *See, e.g., Staples v. Hoefke*, 189 Cal.App.3d 1397, 1406, 235 Cal.Rptr. 165 (1987) (refusing to reverse a judgment for mere failure to award nominal damages where there was no absolute entitlement to costs and no permanent right at stake); *O'Dea v. San Mateo County*, 139 Cal. App.2d 659, 662–63, 294 P.2d 171 (1956) (noting that "a judgment will not be reversed simply to provide nominal damages" but allowing reversal because the award may affect property rights); *Arkley v. Union Sugar Co.*, 147 Cal. 195, 199, 81 P. 509 (1905) (stating the rule that a court will not reverse a judgment for a defendant "although erroneous, if it appears that the plaintiff could not have recovered more than nominal damages"); *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458–59, 35 P. 75 (1893) (explaining that "where a judgment is erroneous only because it fails to give nominal damages, it will not be reversed ..."). Here, we reverse the district court not only for entry of judgment and award of nominal damages, but also because there is a triable issue of fact. This factual dispute negates any concern about reversing "solely" to award nominal damages. *Sill Props.*, 219 Cal.App.2d at 56, 33 Cal.Rptr. 155.

Saks was awarded attorneys' fees under the lease because it was "the successful party." We vacate the award of fees because it is no longer clear that Saks is the successful party.

We therefore REVERSE the judgment of the district court, VACATE the award

---

**2.** Because the California rule is inapplicable, we need not decide whether it is a rule of procedure or substance, and thus whether we are bound to follow it. *See generally Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426–27, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (reaffirming that under the *Erie* doctrine "federal courts sitting in diversity apply federal procedural law and state substantive law"); *Snead v. Metro. Prop. & Cas. Ins., Inc.*, 237 F.3d 1080, 1090–91 (9th Cir.2001) (explaining the test for distinguishing between a procedural and substantive rule).

of attorneys fees, and REMAND for further proceedings consistent with this disposition.